STATE of Iowa, Appellee,

v.

Monroe Harold EVANS, Appellant.

No. 53070.

Supreme Court of Iowa.

June 10, 1969.

Phillip S. Dandos and Ray N. Berry, Sioux City, for appellant.

Richard C. Turner, Atty. Gen., William A. Claerhout, Asst. Atty. Gen., Edward F. Samore, County Atty., Alvin Hayes, Jr., Asst. County Atty., for appellee.

BECKER, Justice.

Defendant was tried and convicted of the crime of robbery with aggravation. He was sentenced to 25 years in the State Penitentiary at Fort Madison and now appeals. We reverse and remand for new trial.

I. One of defendant's complaints is failure to grant a motion for a directed verdict. We consider the evidence for such purpose in the light most favorable to the State. State v. McClelland, Iowa, 164 N.W.2d 189, 197.

The robbery for which defendant was tried and convicted occurred in Sioux City, Iowa at about 8:25 p. m. on May 25, 1967 at Solomon's I.G.A. Grocery Store. The robber walked into the store, proceeded down the aisle to the gondolas where the customers were and returned to the cash register. He held a .38 caliber snub-nosed revolver on Mr. Solomon, told him to open the cash register and hand over the 20's, 10's and 5's but no silver. Solomon complied. The robber also demanded and took Mr. Solomon's wallet containing credit cards, other identification and left the building.

Eugene Chan, an employee, was working in the store at the time but didn't see the actual holdup. He did observe the robber as he walked down the aisle. He described the robber as follows: "He was wearing black gloves and he had dark clothing on. He had kind of light brown hair, he was not wearing a hat; I don't remember anything else about his appearance; when I first saw him he was looking east down the aisle."

At the trial both witnesses identified defendant as the robber. Defendant has had four fingers of his left hand amputated. This fact did not directly affect the identification as the robber wore gloves as indicated. Evidentiary problems connected with these identifications are discussed below.

II. Defendant was arrested near Miles City, Montana when he cashed a check in the presence of a station attendant and deputy sheriff Victor Adrian, with a credit card issued to Maurice Solomon

as identification. The station attendant phoned the bank and determined there was no account for the check. The deputy then pursued defendant, overtook him about 15 miles out of Miles City and took defendant to the county jail. No formal arrest was made.

Defendant's automobile was locked and left on the highway where defendant was apprehended. At the sheriff's office Adrian told defendant they would have the car towed in or he (Adrian) would drive it. Defendant threw Adrian the keys and said, "Here, you can drive it in." Adrian brought the car into the city. When he went back to lock the car Adrian took a credit card from a clear plastic visor just above the driver's position. He had previously noticed the card when it was used at the station and when he drove the car into town.

Defendant identified himself at the sheriff's office as Maurice Solomon. Teletype inquiry was put out under this name, the Sioux City authorities isued a warrant for defendant's arrest, and Iowa authorities came to Miles City, Montana. Defendant waived extradition and was returned to Sioux City.

Defendant contends the identifications by Solomon and Chan were so weak as to require a directed verdict of not guilty. We do not agree. The weight of the testimony was for the jury.

We have carefully considered the admissible evidence in the record and find the State generated a jury question on the issue of defendant's guilt. In State v. McClelland, supra, we said: "The quality of evidence necessary to convict, whether it be circumstantial or direct, must be sufficient to raise a fair inference of guilt. It must generate something more than suspicion, speculation or conjecture. State v. Myers, 253 Iowa 271, 274, 111 N.W.2d 660, 662; State v. Daves, 259 Iowa 584, 586, 144 N.W.2d 879, 881.

"In a criminal case, however, the cause should be submitted to the jury and the court should not direct a verdict of acquittal if there is any substantial evidence reasonably tending to support the charge. State v. Miskell, 247 Iowa 678, 686, 73 N.W.2d 36, 41; State v. Horrell, 260 Iowa 945, 151 N.W.2d 526, 529." (loc. cit. 164 N.W.2d at page 197).

■ III. However, other assigned errors impel reversal of this case and remand for retrial. Defendant gave notice of alibi and produced testimony in connection with his alibi claim. The court gave substantially the same instruction in this case as was given in State v. Galloway, Iowa, 167 N.W.2d 89, 95, 96. We there held: " * *. The court gave the previously approved alibi instruction. It placed on defendant the burden of establishing the defense of alibi by the greater weight of the evidence bearing upon it. * * *

"Pursuant to these pronouncements and mandates by the United States courts the alibi instruction can no longer be approved. In this case timely exceptions were taken and preserved.

"The Supreme Court of the United States in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, said: '* * * a change in law will be given effect while a case is on direct review * * *.'

"The matter comes before us for direct review by appeal subsequent to the pronouncements in Stump, supra [Stump v. Bennett, 398 F.2d 111], and accordingly the case must be reversed and remanded."

On the authority of State v. Galloway, supra, this case must be reversed and remanded for new trial. We should note State v. Galloway was decided after the instant case was tried.

IV. Defendant took the stand in his own behalf. The court's instruction in connection with defendant's testimony will not

be repeated here in full. It was similar in form to the instructions approved in State v. Ford, 259 Iowa 744, 145 N.W.2d 638, but recently held to constitute reversible error in State v. Bester, Iowa, 167 N.W.2d 705 (decided April 6, 1969). The instant instruction contained the following sentence not found in the State v. Bester instruction: "You should consider and treat him the same as any other witness in the case, and after considering all the facts and circumstances you will then determine whether or not such testimony is given in good faith or only for the purpose of avoiding a conviction, and you will give it such weight and credit as in your sound judgment you deem it to be entitled to."

The State argues defendant's objection was insufficient to preserve the error. We need not decide the point. The case must be retried for the reasons stated in Division III. The trial court will be guided by State v. Bester, supra, in drawing its instructions for a new trial and the matter will not arise again in this case.

■ V. In view of the remand for retrial it is necessary to consider other errors assigned by defendant. Upon return to Iowa a preliminary hearing was set for July 18, 1967. Defendant had his own attorney but later requested court appointed counsel. The request was granted. After several continuances at defendant's request, the hearing was held and he was bound over to await action of the grand jury on August 11, 1967. On September 6, 1967 a county attorney's information was filed charging defendant with robbery with aggravation.

Defendant made numerous motions, some through his attorney and some acting for himself. These motions were all overruled except for a motion to submit the matter to the grand jury. The court acquiesced in the latter motion. Upon submission the grand jury returned an indictment charging the same crime. Thereupon defendant moved to dismiss the indictment on several grounds.

First, defendant claims he was denied a speedy trial. Because of chapter 400, section 148 and 244, Acts of the Sixty-second General Assembly, (1967) which changed the time for convening the grand jury from a time fixed in relation to terms of court to quarterly meeting dates, the grand jury did not meet in Woodbury County in September. Defendant was properly informed against within thirty days and the case was set for trial. It was at his own insistence that the matter was delayed to await the action of the grand jury which met in October. Defendant was promptly indicted.

After numerous motions filed by defendant were disposed of trial commenced on November 27, 1967. The delays were wholly due to various technical defenses raised by defendant and no demands were made as provided in sections 795.1 and 795.2, Iowa Code, 1966. There was no denial of a speedy indictment or speedy trial. State v. Johnson, Iowa, 167 N.W.2d 696 (decided May 6, 1969).

■ VI. Defendant also complains the trial court erred in impaneling of the grand jury in the absence of defendant's attorney. When the grand jury had gathered, defendant was brought before them to exercise his rights to challenge the panel. His attorney was not present and he asked for delay until his court-appointed attorney was present. The court refused the delay after asking if the attorney knew the grand jury was to be impaneled at that time and receiving an affirmative answer.

It would have been better had the court granted defendant's request but under all of the circumstances shown here we hold failure to delay proceedings until defendant's attorney could be called was not prejudicial error.

The United States Supreme Court, in examining claimed violations of constitutional rights, adheres in some types of cases to the "totality of circumstances" doctrine. Cf. Mempha v. Rhay, 389 U.S. 128, 88 S.Ct.

254, 19 L.Ed.2d 336 (Nov. 1967), (involving revocation of parole) where the total circumstances were examined but the phrase was not used. Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (Nov. 1968), (police lineup procedure) where the phrase is used.

The error claimed here does not reach constitutional dimensions when the totality of the circumstances are considered. Defendant had previously been validly informed against by county attorney's information. The new proceedings were at his insistence. Nor does the failure to grant the short delay requested demonstrate such fundamental unfairness as to vitiate the subsequent proceedings. We hold the errors assigned in defendant's Division VI to be without merit and defendant may be retried on the same indictment.

■ VII. Defendant claims he was twice placed in jeopardy because he was forced to defend himself at a preliminary hearing and later at trial on the merits. There is no merit to this contention. The purpose of the preliminary hearing is to determine whether sufficient evidence exists to hold the accused for trial. Chapter 761, Iowa Code, 1966; Barber v. Page, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255, 51 Iowa Law Rev. 164.

The preliminary hearing by itself cannot afford a basis for a claim of double jeopardy. State v. Davis, 236 Iowa 740, 743–746, 19 N.W.2d 655; 51 Iowa Law Rev. 164, 171 n. 47, 180 n. 103–106. See generally State v. Sefcheck, Iowa, 157 N.W.2d 128, 132–133; State v. Dickson, 200 Iowa 17, 202 N.W. 225; Delay v. Brainard, 182 Neb. 509, 156 N.W.2d 14, 17.

VIII. Another assignment of error involves the trial court's failure to order the State to sustain defendant's motion for a bill of particulars. We need not directly pass on this assignment because the material sought by defendant was largely made known in the first trial. In the event of further requests for information prior to the second trial, the court now has State v. Eads, Iowa, 166 N.W.2d 766, as precedent in meeting any new problems raised by the parties.

■ IX. Defendant assigns several errors relating to the admission of evidence. On rebuttal the State produced Deputy Sheriff Eugene Rodbeig. Defense counsel, on cross-examination, had asked the witness if he had talked to other prisoners in the county jail and was told the witness had talked to one, Steve Birmingham. Counsel did not attempt to get the contents of the conversations. On redirect the State asked: "Q. What was the conversation that you had with Mr. Birmingham? MR. DANDOS: Object * * * for further reason that it's hearsay. THE COURT: Overruled, you may answer. * * *.

"He said Mr. Evans was quite a clown, all of the fellows liked to hear him talk and on several different occasions he had told the fellows in the cell block how he stuck Mr. Solomon up, * * *."

This matter was clearly hearsay. The State now argues the material was admissible as an admission against interest and thus an exception to the hearsay rule. McCormick, Law of Evidence, section 226, page 461 states: "When the witness reports on the stand that one declarant stated to him that another declarant made a given statement, this may be termed 'double hearsay,' if both statements are offered to prove the facts asserted. 'Multiple hearsay' would include double hearsay and instances where the chain of repeated statements is longer still, as where the witness reports that A told him that B said that C had stated a given fact. Multiple hearsay is, of course, even more vulnerable to all the objections which attach to simple hearsay, and it seems that if it is to come in at all, *each of the out-of-court statements must satisfy the requirements of some exception to the hearsay rule*." (emphasis supplied.)

Cf. State v. Leib, 198 Iowa 1315, 201 N.W. 29.

"An oral admission of a party can be shown only by the testimony of a person who heard it; a witness who did not hear the admission cannot testify as to what a person who did hear it told him about it." 31A C.J.S. Evidence § 193 i, p. 546; See also § 370.

■ Birmingham's testimony as to what defendant said would have been admissible as an admission.[1] The deputy's testimony as to what Birmingham said the defendant said comes under no known exception. Stated differently, an admission, as an exception to the hearsay rule, does not apply to such "double hearsay". The evidence was erroneously admitted.

Defendant's further objections to testimony of officers Greiner and Rubis on hearsay grounds are not sound. The evidence was within the *res gestae* exception to the hearsay rule. State v. Johnson, Iowa, 152 N.W.2d 426, 430.

■ X. Defendant also complains of admission of certain articles into evidence. The assigned errors cover rulings on motions to suppress, objections predicated on insufficient foundation due to failure to show a proper claim of possession, insufficient identification of the exhibits and other matters. In view of retrial we will review the record facts in relation to the acquisition and possession of the evidence in some detail.

When defendant was first apprehended and detained in Montana nothing was taken from him or from his car. He was taken to the county jail, given the warnings required, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and questioned. Defendant's car was left on the highway and brought in by the arresting officer.

Exhibit 25, the check written by defendant in the Miles City gas station which occasioned the arrest is claimed to be inadmissible because it tends to show commission of another crime. In State v. Dunne, 234 Iowa 1185, 1195, 15 N.W.2d 296, we said: "While it is said to be the general rule that evidence is not receivable of a crime not charged in the indictment, there are well recognized exceptions to the rule. Evidence of another offense is admissible where it is so related to the offense charged that proof of the former tends to establish the latter; also where such evidence tends to identify the accused as the person who committed the crime charged. Evidence otherwise competent to prove some ·fact material to the crime charged is not inadmissible because it tends to prove defendant guilty of another crime. (cases cited)." The check was signed by defendant in witness Adrian's presence, using the name Maurice T. Solomon and the credit card shown to have been taken in the robbery was used as identification. The exhibit tended to identify defendant as the person who committed the crime charged.

■ XI. Exhibit 6, a Continental Oil Company credit card, issued in the name of Maurice T. Solomon, was in plain sight on the sun visor of defendant's car when deputy Adrian drove the car into town. It related to the check charge for which defendant was being held and was taken by the deputy before he locked the car. There was no search and the seizure was reasonable. Identification of the exhibit in court was sufficient. The exhibit was relevant and properly admitted. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed. 2d 1067; State v. Brant, Iowa, 150 N.W.2d 621, 625.

■ A black billfold, State's exhibit 5, was found on top of the cell in which defendant was being held. This discovery was

---

[1] In this regard it should be noted that Birmingham had been returned from the State reformatory at defendant's request and was physically available to either party as a witness. He indicated he preferred not to testify for either side. Neither side called him.

made while the Montana sheriff was searching the cell after hearing that defendant was trying to break out of jail. This billfold and its contents were not illegally seized.[2] Being otherwise relevant they were admissible in evidence upon proper identification. Lanza v. New York, 370 U.S. 139, 142, 82 S.Ct. 1218, 8 L.Ed.2d 384; Konigsberg v. Ciccone, D.C., 285 F. Supp. 585, 592–593, 598–599; State v. Woodall, 16 Ohio Misc. 226, 241 N.E.2d 755.

XII. The day after the car had been brought to the sheriff, the sheriff's deputies, without a warrant, "inventoried" the contents of the car without consent by defendant. At this time they knew defendant was wanted in Iowa on charges unrelated to the check charges on which he was being held. The record leaves little doubt the "inventory" was in fact a thorough search of the car.

The car contained a man's sports jacket. In the pocket of the jacket the officers found a snub-nosed .38 caliber revolver containing four live shells. Defendant stipulated to admission of the gun and a pair of black leather gloves found in the car and does not now assign admission of these articles as error.

Defendant assigns as error the admission of four bullets, identified as those contained in the gun, numerous identification cards, social security cards, and the like, all of which were found in the car when it was "inventoried".

■ We consider the problem posed by the bullets separately. We find no error in admission of the bullets. They were contained in the gun when it was taken. A police officer testified to removing the bullets from the gun when it was delivered to him in Sioux City. Defendant, by stipulating admission, clearly waived his right to complain of the manner of acquisition of the gun and gloves. We think he also waived his right to complain of the manner of acquisition of the bullets contained therein.

■ XIII. Objection to other evidence obtained in the search was not waived and no stipulation was made in relation thereto. As to such evidence the search and seizure without a warrant must be justified either on the basis of consent or as incident to a lawful arrest. (The State argues both points.)

On the issue of consent the State relies on defendant's reaction to the deputy's suggestion that the car would have to be towed to Miles City. Defendant tossed the keys to Deputy Adrian with the remark, "Here, you can drive it in." Had the car been towed to the police station as suggested by Deputy Adrian there can be no question that the above evidence would not amount to consent to search. The State seems to argue that a consent to search may be implied from the act of delivery of the car keys. An annotation at 9 A.L.R.3d 858 at page 916 collects the cases involving consent to search automobiles. There are numerous cases where delivery of car keys to the officers was a factor in finding a consent to search. In such cases, however, delivery of the keys was accompanied by an oral statement, either by the officers or the defendant, showing a search was intended.

Consent to search was found in Robinson v. United States, 325 F.2d 880, 884; Longo v. State, 157 Fla. 668, 26 So.2d 818, 819; One 1937 Dodge Coupe v. State ex rel. Springer, (Okl.), 265 P.2d 703, 704. See also, 9 A.L.R.3d 858, section 18(a) at 916–22.

No consent was found in United States v. Nikrasch, 367 F.2d 740, 742; Weed v. United States, 340 F.2d 827, 829; Thurlow v. State, 81 Nev. 510, 406 P.2d 918, 921; Dade v. State, 188 Okl. 677, 112 P.2d 1102, 1104. See also cases cited in 9 A.L.R.3d 858, 922–925.

2. The problem of what exhibits, if any, were in the billfold found in the jail is an evidentiary problem to be dealt with on retrial.

In State v. Shephard, 255 Iowa 1218, 1222, 124 N.W.2d 712, 715, we said: "The burden of demonstrating that evidence has been illegally procured normally devolves upon the accused in a motion to suppress such evidence. (cases cited). However, where the government relies upon consent to an otherwise illegal search and seizure, it has the burden of proving by clear and convincing evidence that the consent was voluntary and free from duress and coercion. (cases cited).

"It is for the trier of fact to determine whether the consent was voluntary or coerced. The evidence in this instance must be viewed in the light most favorable to the State. * * *."

We find no cases precisely like the case at bar. Iowa cases involving the issue of consent to search include State v. Gates, Iowa, 150 N.W.2d 617, 619; State v. Halverson, Iowa, 155 N.W.2d 177, 178; State v. Peterson, Iowa, 155 N.W.2d 412, 414; State v. Anderson, 260 Iowa 122, 148 N.W. 2d 414. All of those cases found the evidence of consent sufficient but each contains some evidence upon which *consent to search* can be predicated.

The evidence here, viewed in the light most favorable to the State, reveals no evidence of consent to search the car. The trial court's ruling on evidence thus obtained was therefore erroneous.

■ XIV. The State argues this search was made incident to a lawful arrest. We cannot so hold. The arrest was made the day before the search.

Preston v. United States, 376 U.S. 364, 365, 84 S.Ct. 881, 882, 11 L.Ed. 777, 779, 780, controls this case: "* * *. The officers arrested the three men for vagrancy, searched them for weapons, and took them to police headquarters. The car, which had not been searched at the time of the arrest, was driven by an officer to the station, from which it was towed to a garage. Soon after the men had been booked at the station, some of the police officers went to the garage to search the car and found two loaded revolvers in the glove compartment. * * *. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. * * *."

The court noted an exception to Preston in Cooper v. California, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730, 734: "* * *. Under the circumstances of this case, we cannot hold unreasonable under the Fourth Amendment the examination or search of a car validly held by officers for use as evidence in a forfeiture proceeding." Here the car was not being held as contraband or as evidence. (It was, in fact, purchased from defendant by the Montana sheriff before defendant was turned over to the Iowa authorities.)

The distinction between Cooper and Preston is the same under the facts of this case as it is under Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 220, 88 S.Ct. 1472, 1475, 20 L.Ed.2d 538, 543, where the court, speaking through Mr. Justice White, was unanimous on the following point: "The search in question here is not saved by Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), which upheld a warrantless search of a car impounded 'as evidence' pursuant to a state statute. The police there were required to seize the car and to keep it until forfeiture proceedings could be completed. In those circumstances, said the Court, '[i]t would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it.' 386 U.S., at 61–62, 87 S.Ct. [788] at 791 [17 L.Ed.2d at 733]. In the instant case there is no indication that the police had purported to impound or to hold the car, that they were authorized by any state law to do so, or that their search of the car was intended to implement the purposes of such custody. Here the police seem to have parked the car near the courthouse merely as a convenience to the owner, and to have been willing for some friend

or relative of McKinney (or McKinney himself if he were soon released from custody) to drive it away. The reasons that made the warrantless search in Cooper reasonable thus do not apply to the search here. The Court discussed in Cooper, 386 U.S. at 61, 87 S.Ct. [788] at 790 [17 L.Ed. 2d at 733], the reasons why that case was distinguished from Preston. The case before us is like Preston and unlike Cooper according to each of the distinguishing tests set forth in the Cooper opinion."

We have recently considered several cases where a search claimed to be contemporaneous to a lawful arrest has been approved. The closest case on its facts is State v. Anderson, 260 Iowa 122, 148 N.W. 2d 414, 415. The defendants were arrested on a busy street after being stopped incident to a report of an attempted breakin. Two loaded guns were found in the car at the scene of the arrest. " * * *. The two men were told they were under arrest for carrying concealed weapons and were driven to the police station. At the same time an officer drove defendant's car to the police garage near the station where the search begun at the place of arrest was promptly completed." The continued search turned up other evidence of the crime. In considering the validity of the search we distinguished the case from Preston v. United States, supra, in that the search was started contemporaneously with the arrest and promptly completed after the car was moved. There was a continuity of purpose in the arrest and search which was lacking in Preston v. United States, supra, and the automobile was itself an instrumentality of the crime. None of these distinguishing factors are present here. We therefore hold the search of defendant's car the day after his arrest, without a warrant, was an illegal nonconsent search not incident to his arrest. The fruits of the search (except those items which defendant affirmatively consented might be accepted in evidence) were inadmissible.

We hold the gun, four bullets and gloves were admissible in evidence because, as a matter of his own trial tactics, defendant affirmatively waived his right to object to them. The Continental Oil Company credit card was admissible because it was not acquired as a result of a search.

Other items of evidence discovered in the car when it was searched the day following the arrest are inadmissible.

XV. Defendant objects to the admissibility of the foregoing exhibits because they were not properly identified and the showing on the chain of possession was fatally weak. We do not consider the point as the foundation evidence will be laid anew at a new trial and need not be decided on the record before us.

■■■ XVI. Defendant urges error in the admission of carbon copies of various Continental Oil Company charge slips. Defendant had taken the stand and testified to the use of the credit card, exhibit 6, at various oil stations throughout the length and breadth of the midwest. He said he bought the credit card from an acquaintance in Sious Falls, South Dakota and used it to obtain cash and merchandise as indicated. These copies do not violate the best evidence rule. They are obviously copies made simultaneously with the original as part of the initial credit card transaction. The customer keeps one slip and the gas station keeps the other. Each has his evidence of the transaction. No question of alteration of the slips is raised.

In Luse v. Waco Community Sch. Dist. of Henry County, 258 Iowa 1087, 1096, 141 N.W.2d 607, we said: " 'Where an original instrument or writing is made or executed in duplicate * * * each duplicate * * * is primary evidence and is admissible; each of the parts is the writing which is to be proved, because, by the acts of the parties, each is made as much the legal act as the other * * *. As a general rule, either duplicate is admissible, and the mere fact that one duplicate was delivered to the adverse party does not change the other duplicate into secondary evidence; but where

a copy contains matter not found on the other copy * * * such copy is admissible.' 32A C.J.S., Evidence § 821, p. 160 [161]." McCormick, Law of Evidence, section 206, pages 419–421.

XVII. The slips are, of course, evidence of commission of other crimes. Section 713.39 of the Code. This alone will not make them inadmissible as evidence if they are material, relevant evidence of the commission of the crime in question. State v. Agee, 257 Iowa 1345, 136 N.W.2d 419. When defendant testified at length to the use of the credit card he opened the door to admission of the charge slips in question.

On cross-examination, involving the use of the credit card, defendant sought to invoke Amendment 5 to the Constitution of the United States as a grounds for refusal to answer. The trial court compelled answer. Defendant now complains. The trial court was right. Defendant waived his Amendment 5 privilege against self-incrimination when he took the stand in his own behalf and testified as to his use of the credit card, and cannot reinvoke it to prevent legitimate cross-examination. State v. Johnson, Iowa, 155 N.W.2d 512, 516–17, and citations.

XVIII. Defendant complains of having been brought into court, past the jury, in handcuffs. We find no evidence of his having been in handcuffs while the trial was in progress. The trial court, in answer to defendant's objections said: " * * *. The matter of custody is solely to be handled by the Sheriff's office, and I have no control over it, how he is, whether he is available for consultation at recesses or not." The court misconceived its authority and duty. In Sparkman v. State, 27 Wis. 2d 92, 133 N.W.2d 776, 778, 779, the general rule is set out: "The defendant argues reversal is required because he was manacled during the preliminary hearing and on three other occasions before the court prior to his trial. No claim is made the defendant was manacled at his arraignment or at his trial before the jury. * * *.

"We must point out that the evils sought to be avoided by permitting the defendant to appear free from shackles is the creation of prejudice in the minds of the jury before whom the defendant is tried. The rule that the accused should not be manacled at his trial is not absolute as the safety of the prisoner and others may demand shackles even in the presence of the jury. It is for the trial court rather than the police to determine whether such caution is necessary to prevent violence or escape. Such action on the part of the trial court should not be reversed on appeal unless it amounts to abuse of discretion. 14 Am.Jur. Criminal Law, p. 855, sec. 132. The general rule is stated in Way v. United States (10th Cir., 1960), 285 F.2d 253, 254, as:

" 'It is the general rule that under ordinary circumstances freedom from handcuffs, shackles, or manacles of a defendant during the trial of a criminal case is an important component of a fair and impartial trial. In other words, such procedure should not be permitted except to prevent the escape of the accused, to prevent him from injuring others, and to maintain a quiet and peaceable trial. * * *' "

A variety of circumstances under which trial courts have had occasion to use their power in this area are found and analyzed in State v. Roberts, 86 N.J.Super. 159, 206 A.2d 200; State v. Coursolle, 255 Minn. 472, 97 N.W.2d 472; Tunget v. Commonwealth, 303 Ky. 834, 198 S.W.2d 785.

The only Iowa case cited on the subject, State v. Brewer, 218 Iowa 1287, 1299, 254 N.W. 834, does not consider the matter in detail but finds no prejudicial error occurred. Under the record here we also find the error, if any, would not warrant reversal. The record indicates some difficulty in providing an orderly trial. To that end, in a proper case, the court must be able to

order such restraints as are necessary. United States v. Bentvena, 319 F.2d 916.

XIX. Defendant requested he be given a lie detector (polygraph) test by someone other than the Sioux City or Woodbury County authorities. The court ruled the local authorities could give a lie detector test if defendant desired. Defendant refused. This matter was improperly raised on trial by defendant several times. The court correctly refused defendant's request to instruct the jury on the matter.

Neither the State nor defendant has a statutory or constitutional right to demand a lie detector test. The test, if given by the State, must be acceded to by both sides. Here the State did not agree to the terms defendant sought to impose. Defendant, not the State, improperly first tried to use these negotiations before the jury. He was not entitled to an instruction.

We have considered polygraph tests in two recent cases. State v. Galloway, Iowa, 167 N.W.2d 89; State v. Hancock, Iowa, 164 N.W.2d 330. Each case demonstrates the difficulties of handling this type of evidence and illustrates the reasons both sides must agree to the procedures before they are used.

XX. We have tried to pass on all present complaints that may occasion trouble on retrial.

In this case Mr. Ray N. Berry, court appointed appellate counsel, submitted a 567 page printed record and a carefully prepared 276 page appellant's brief. His untimely death prevented his preparation of a reply brief and appearance for oral argument. Mr. Dandos, defendant's court appointed trial counsel, handled these latter chores. The dedicated contribution of both men should be, and is, recognized.

Reversed and remanded for new trial.

All Justices concur, except GARFIELD, C. J., who dissents from Divisions IV, XIII, and XIV.