STATE of Iowa, Appellee,

v.

LeRoy Thomas GARRETT, Appellant.

No. 53587.

Supreme Court of Iowa.

Dec. 9, 1969.

John A. Jarvis, Chariton, for appellant.

Richard C. Turner, Atty. Gen., Michael J. Laughlin, Asst. Atty. Gen., and William L. Shelton, County Atty., for appellee.

BECKER, Justice.

Defendant was convicted or robbery with aggravation and sentenced to the mandatory sentence of 25 years. He appeals. We affirm.

The testimony of Mrs. Alice Spencer presents the central issue of this case. She testified she came out of her home in Chariton, Iowa, at about 10:00 A.M., February 1, 1968, accompanied by her two year old daughter. She saw defendant LeRoy Garrett and Ethel Gean Coleman walking near her home. Neither man was known to her at the time. Garrett continued on but Coleman stopped, talked to her, pulled a knife and told her to get into the front seat of her car. She did so and Coleman forced his way into the back seat. He told her where to drive. As they proceeded they saw defendant. She stopped at Coleman's direction and defendant got in the front seat. She testified Garrett said, "Get going and do as we say and you won't get hurt."

After some driving around Chariton, defendant made an offer to pay for gas; this offer was declined and Garrett then got out of the car on a paved highway. After some further driving Mrs. Spencer managed to deliberately get her car stuck on a muddy road leading to a nearby lake. Coleman later left Mrs. Spencer at this point.

The record evidence before the jury does not include the fact Coleman raped Mrs.

Spencer before leaving her, was later convicted of this crime, received a new trial by order of this court and subsequently pled guilty to both rape and robbery with aggravation. Despite absence of these facts from the record before the jury, defendant's present counsel contends these well-publicized facts, plus the fact Garrett was white and Coleman was black, were known to and influenced the jury deliberations. No proof of these charges or of prejudicial results is offered.

Mrs. Spencer managed to get a ride for herself and child to Chariton. Subsequent search of the car revealed a towel and two one dollar bills with blood on them; also a knife that was shown to have been purchased by defendant earlier in the morning.

After leaving Coleman and Mrs. Spencer, defendant hitchhiked a ride with a passing trucker. As the truck approached an intersection known as Highway 34 and transformer road, they saw Coleman on the highway. Garrett immediately asked to get out of the truck, joined Coleman and proceeded north from the highway. The men were arrested the next day at a pole barn about three and one-half miles north of the intersection.

The State also showed Garrett's and Coleman's arrival in Chariton after having been in an automobile accident and efforts to buy a used car in Chariton. The State then rested its case.

Defendant was a witness for himself. He told of meeting Coleman in Fort Dodge, Iowa, discovering they both had been confined in the State prison at Fort Madison, Iowa, at the same time, traveling with Coleman to Chariton via Des Moines and gave his version of the events leading up to his being picked up by Mrs. Spencer on the street in Chariton. He denied having told Mrs. Spencer to "get going, do as we say and you won't get hurt." He says he was trying to get away from Coleman during the morning of February 1st; he bought the knife to cut up some bologna

that he had, left it on his dresser in the hotel room (where Coleman could have gotten it) and did not see the knife used or being shown in the car.

He produced witnesses to corroborate that he and Coleman registered separately and left the hotel separately but were given adjoining rooms.

Garrett also said he hitched a ride going east when he left Mrs. Spencer and Coleman. When he found out he was going east he got out and hitched a ride going west. It was on the way back near the transformer corner that they saw Coleman and he, Garrett, got out of the truck. He explains the subsequent flight and hiding in the barn where they were caught as due to some bad checks he had passed while in Fort Dodge. He told of his previous criminal record which included a 10-year sentence for forgery, parole, revocation thereof and service of the sentence at Fort Madison.

**■** I. We first consider Division II of defendant's brief. He urges a verdict of not guilty should have been directed by the court. In reviewing such a motion on grounds of insufficiency of evidence, we view the record in the light most favorable to the State. State v. Evans, Iowa, 169 N.W.2d 200, 202. Defendant's statement to Mrs. Spencer, while denied by Garrett, could be taken as a verity by the jury. There was also the association between defendant and Coleman both before and after the crime; the knife, purchased by defendant shortly before the escapade and found in the car immediately thereafter, the money found in the car and the admitted presence of Garrett in the car while Mrs. Spencer was being forced to drive around Chariton. The defense argument relies heavily on Garrett's own testimony and explanation of the events. It overlooks the fact the jury was not required to believe him. We will not extend this opinion with further comment on the evidence. A jury case was generated.

II. The indictment under which defendant was charged read: "Accuse LeRoy Garrett of the Crime of Robbery with Aggravation, as defined by Section 711.2 of 1966 Code of Iowa and charge that the said LeRoy Thomas Garrett in the County and State aforesaid, on or about February 1, 1968, by aiding and abetting Ethel Gean Coleman in its commission, did with force or violence, or by putting in fear, steal and take from the person of Alice Spencer a 1960 Ford Galaxie automobile, at which time LeRoy Thomas Garrett had a confederate, to-wit: Ethel Gean Coleman, aiding or abetting him in such robbery, the said Ethel Gean Coleman being then and there present and armed with a dangerous weapon, to-wit: a knife, with intent if resisted, to kill or maim said Alice Spencer." Defendant argues this indictment together with the instructions allowed the State to try him both as a principal and an aider and abettor.

State v. Shearer, 206 Iowa 397, 401, 220 N.W. 13, 14 approves an instruction based on section 12895, Code, 1924 (now 688.1, Code, 1966) saying "there is no distinction between an accessory before the fact and a principal, and that all persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid and abet its commission, must be indicted, tried, and punished as principals."

In State v. Bittner, 209 Iowa 109, 111, 227 N.W. 601, 602, we said: "* * * A person accused, as principal, of any felony may be a co-conspirator, and the state, may, in the prosecution of said felony, avail itself, as a matter of evidence, of a conspiracy theory, but at the same time invoke the theory of aider and abettor in the commission of the crime charged. See State v. Mickle, 199. Iowa 704, 202 N.W. 549 * * *."

In State v. Myers, Iowa, 158 N.W.2d 717, 721, we said: "Appellant correctly contends that under this charge the State was required to establish that the defendant either directly committed the act constituting robbery with aggravation or that she knowingly aided and abetted the commission of the act. (Citations) * * *."

It appears we have consistently held the State may charge a defendant as principal under section 688.1, Code, 1966, in that he was an aider and abettor but still be able to prove defendant was *either* a principal in fact *or* an aider and abettor. It is this holding with which the defendant quarrels. But this would appear to be one of the natural and intended consequences of section 688.1. Since the distinction between aiding and abetting and principal is abolished, proof of either participation is sufficient.

It may well be the indictment and instructions could have been more artfully drawn. The indictment was not challenged and the instructions are not misleading in light of the principle heretofore considered.

III. Defendant says there is no larcenous taking under the facts shown above. He recognizes State v. Jackson, 251 Iowa 537, 101 N.W.2d 731 is against him on this issue but thinks Jackson should be overruled or distinguished. Factually, Jackson and this case are sufficiently alike for the principle to be controlling. The holding in Jackson was proper and we follow it now; at pages 543 and 544 of 251 Iowa, page 735 of 101 N.W.2d, we said: "But we think, and so hold, that an automobile may be the subject of larceny. * * *

"* * * The act of the defendant here in taking charge of the automobile then in the possession of Joseph Dixon comes exactly within this definition (of the general larceny statute). He entered the car and took possession of it from Dixon by means of a gun. He ordered Dixon to drive, enforcing this command by the use of the revolver and threats. From that time on, the car was no longer in the possession of Dixon, but of the defendant."

IV. Defendant complains of the admission of hearsay testimony, citing State v. Evans, Iowa, 169 N.W.2d 200. We have examined the questions and answers complained of with care. They are in no way comparable to the situation in State v. Evans, supra. The trial court excluded all hearsay testimony concerning what Coleman and Mrs. Spencer said after Garrett left. Similarly no prejudicial hearsay testimony was elicted either from the filling station operator or the sheriff.

V. The evidence elicited from Mrs. Spencer as to what she and Coleman did (as distinguished from what they said) after defendant Garrett left was material to the issue of larceny. She simply testified she got the car stuck in the mud, Coleman pushed the car trying to get it started and subsequently Coleman left. No prejudicial error occurred by reason of the admission of such evidence.

VI. Finally defense counsel argues his client was denied a fair trial because compensation for court appointed counsel for indigent defendants is systematically and regularly too low in Iowa. He does not challenge competency of counsel in this case. Neither he nor trial counsel has sought review by methods other than direct appeal. The latter course was foreclosed by State v. Schmidt, 259 Iowa 972, 145 N.W.2d 631.

In essence counsel heatedly condemns the entire system of appointment of counsel and compensation for counsel after appointment. It may well be that the progress of this State in meeting the demands of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733, is something less than satisfactory to those who look on our efforts with a critical eye. The burdens placed on the judicial systems, the State governments and the professional practicing lawyers of the State by Gideon v. Wainwright, supra, were and are substantial. The efforts to meet the burdens have also been substantial. We will not reverse a case simply on the attempted indictment of the system where there is no charge or proof that counsel was incompetent. Perhaps this is a good illustration of Mr. Justice Holmes' oft quoted remark:

"I recognize without hesitation that judges do and must legislate, but they can do so only interstitially; they are confined from molar to molecular motions." Southern P. Co. v. Jensen (1917) 244 U.S. 205, 221, 37 S.Ct. 524, 531, 61 L.Ed. 1086, 1100.

Affirmed.

All Justices concur, except STUART, J., who takes no part.