STATE of Iowa, Appellee,

v.

Jonathan Boyd RYDEL, Appellant.

No. 59292.

Supreme Court of Iowa.

Feb. 22, 1978.

Emmit J. George, Jr. of Cahill, Johnston, Poula & Goetz, Iowa City, for appellant.

Richard C. Turner, Atty. Gen., J. Susan Carney, Asst. Atty. Gen., and Jared O. Bauch, County Atty., for appellee.

Considered by MOORE, C. J., and RAWLINGS, LeGRAND, UHLENHOPP, and HARRIS, JJ.

HARRIS, Justice.

Defendant was convicted of manufacturing a controlled substance and of two counts of conspiracy (to manufacture a controlled substance and to deliver a controlled substance) in violation of § 204.401(1), The Code, 1975. Defendant's three assignments of error challenge (1) whether probable cause for a search warrant was shown before the issuing magistrate, (2) whether there was a variance between the county attorney's information and the proof offered at trial, and (3) whether there was sufficient corroboration of the testimony of accomplices. We affirm the trial court.

Viewing the evidence according to the verdict it was shown Jonathan Boyd Rydel (defendant) and others were making am-

phetamines in a farmhouse near the town of Traer, in Tama County, Iowa. Defendant was a subtenant of this farmhouse. Pursuant to a search warrant a Tama County deputy sheriff searched the farmhouse and found paraphernalia used in manufacturing amphetamines and barbiturates.

A central figure in the State's evidence was Nathan Brooks who had studied chemistry at Grinnell College. Brooks thereafter did postgraduate work in chemistry at an eastern university and at time of trial was a candidate for a Ph.D. degree. Brooks knew how to make amphetamines, commonly known as "speed."

Brooks was a fellow student at Grinnell with George Ebert and Lou Ganousis. Somehow Ganousis became acquainted with defendant and Jim Marince. Defendant and Marince were essentially the organizers of the scheme involved in this prosecution and were to be responsible for the ultimate disposition of the manufactured amphetamines.

Apparently through telephone conversations Ganousis persuaded Brooks to come back from his studies in the east to help set up a drug laboratory. Brooks did so. Those involved in the operation were defendant, Ganousis, Marince, Brooks, Ebert, and others, including Terry Anderson. Anderson was the original lessee of the farmhouse. He in turn subleased it to defendant. Later Anderson became involved in the operation.

In early July of 1975 Brooks sent a letter to Ganousis. He addressed the letter to "Terry Anderson, RR 2, Traer, Iowa." It happens that two Terry Andersons reside near Traer. One receives his mail at RR 1 and the other at RR 2. The intended recipient, the co-conspirator, is the one who receives his mail at RR 1. The letter was delivered to Mr. and Mrs. LeAllen Terry Anderson at RR 2 in Traer. There is not the slightest hint of any knowing interception of the letter by postal or law enforcement authorities. It was simply a case of the letter being misaddressed. When Mr. and Mrs. LeAllen Terry Anderson received the letter they opened and read it and de-cided to turn it over to the law enforcement authorities.

After the letter was delivered to the sheriff's office a deputy contacted the Iowa bureau of criminal investigation and learned Terry Anderson was believed to be a drug "pusher" in the Waterloo area. The deputy also learned certain terms in the letter indicated a drug operation. Thereafter the investigation turned to the farmhouse where the operation was taking place.

On the basis of the investigation a search warrant was sought and obtained from a magistrate. Evidence gathered in the subsequent search was used to convict the defendant.

I. The standard for testing probable cause for the issuance of a search warrant is well established: "* * * Probable cause exists where the facts and circumstances presented to the judicial officer are sufficient to justify the belief of a person of reasonable caution that an offense has been or is being committed. (Authority)." *State v. Wright*, 244 N.W.2d 319, 320 (Iowa 1976). See also *State v. Easter*, 241 N.W.2d 885, 886–887 (Iowa 1976) and citations. The issuing officer cannot rely on mere conclusions to determine that probable cause exists. *State v. Boer*, 224 N.W.2d 217, 219 (Iowa 1974). The validity of a search warrant must stand or fall on the facts recited in affidavits for the search warrant and abstracts of oral testimony endorsed on the application for the search warrant. A warrant cannot be rehabilitated on the basis of later testimony. *State v. Liesche*, 228 N.W.2d 44, 48 (Iowa 1975). An affidavit for search warrant may consist of hearsay provided the affidavit also contains a substantial basis for crediting such hearsay. *State v. Everett*, 214 N.W.2d 214, 217 (Iowa 1974) and authorities. In connection with crediting such hearsay, less is required to show reliability when information is given from citizen informants rather than from professional informants. Careful details in such an affidavit further support its reliability. *State v. Wright*, supra, 244 N.W.2d at 321. When probable cause for

issuance of a search warrant is challenged on appeal we make an independent examination of the facts and findings as shown by the record in order to determine whether probable cause exists. *State v. Spier*, 173 N.W.2d 854, 857 (Iowa 1970).

The information for search warrant in the instant case was sworn to by Mike Richardson, a Tama County deputy sheriff. Attached to the information were the following documents:

(1) the incriminating letter to "Lou" and the envelope (in which it was enclosed) addressed to Terry Anderson, RR 2, Traer, Iowa, 50675.

(2) statement of Bruce C. Bolin reciting uncredited hearsay. Bolin's statement does not indicate any reason he considered the hearsay to be reliable. We give it no consideration.

(3) the affidavit of Dale M. Magnuson stating that LeAllen Terry Anderson receives mail on RR 2 and Terry Anderson on RR 1.

(4) a statement of Minnie Schafer, deputy sheriff, advising the sheriff's office of the suspicious nature of the intercepted letter. The caller was reported to be a Michael Rehberg, assistant director of the bureau of criminal investigation at its laboratory in Des Moines. By reason of the positions of the deputy and the assistant director we believe the statement could be considered by the magistrate, not to indicate any criminal acts, but only to indicate the investigating officers might be suspicious of some.

(5) the statement of Mike Richardson concerning the interview with a neighbor who independently saw drug paraphernalia in the farmhouse. This hearsay statement of the neighbor is not credited in any way. We give it no consideration.

(6) the statement of the neighbor himself which describes only the location of his home and the house in question. The statement does not contain any reference to the neighbor's visit to the house in question. The statement is not probative and we give it no consideration.

■ Omitting the uncredited hearsay testimony we are still left with a record, sworn to by Deputy Richardson, which is sufficient to support a finding of probable cause on the part of the magistrate. The letter itself, the explanation of how it was received, and to whom it was addressed, and what the letter indicated would justify a reasonably cautious person to believe an offense had been or was being committed on the premises. The trial court was right in refusing to suppress evidence obtained as a result of the search. Defendant's contention to the contrary is without merit.

II. In his second assignment of error defendant argues he was denied a fair trial because of what he calls a fatal variance between the county attorney's information and the proof offered at trial. Defendant was charged as a principal under all three counts in the county attorney's information. He contends the State attempted to prove his guilt only as an aider and abettor, a difference which he characterizes as a variance.

■ We need not determine whether the State's proof showed defendant was a principal or an aider or abettor. Under Code section 688.1: " * * * [A]ll persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense, or aid and abet its commission, * * * must hereafter be indicted, tried, and punished as principals." To have charged defendant as an aider and abettor in the county attorney's information would have been surplusage. *State v. Guess*, 223 N.W.2d 214, 215–216 (Iowa 1974). See also *State v. Rush*, 242 N.W.2d 313, 316 (Iowa 1976); *State v. Garrett*, 173 N.W.2d 87, 90 (Iowa 1969). There was no fatal variance. Defendant's contention to the contrary is without merit.

■ III. In his final assignment defendant contends there was no corroboration of the testimony of the two accomplices who testified against him. Testifying for the prosecution were Brooks and Terry Anderson. Testimony of accomplices, of course, must be corroborated. Section 782.5, The Code.

Defendant's argument under this assignment hinges upon a ruling favorable to him in division I. We have already rejected defendant's contentions in division I and held the evidence obtained as a result of the search warrant was admissible. That evidence formed ample corroboration of the testimony of Brooks and Anderson.

AFFIRMED.