STATE OF IOWA, Appellee, v. FRANK BITTNER, Appellant.

No. 39026.

NOVEMBER 21, 1929.

*Maurice J. Breen,* for appellant.

*John Fletcher,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, *James I. Dolliver,* County Attorney, *John E. Mulroney,* Assistant County Attorney, and *B. J. Price,* Special Prosecutor, for appellee.

De Graff, J.—This case is an echo of the work of certain gangsters in the peaceful city of Fort Dodge, Iowa. Three persons, to wit, the defendant, Frank Bittner, his accomplice, Casey Navin, and the deceased, George McIntire, were professional gamblers and bootleggers. A fourth party, known as Red Watson, whom counsel for defendant terms ''a professional gunman from Omaha,'' was brought onto the scene of action by Bittner and Navin, for the sole purpose of acting with the two men in the perpetration of a robbery of George McIntire, the deceased. It was the imported gunman, Watson, who fired the fatal shot, while the three men were acting in concert to accomplish the robbery aforesaid. Navin was first arrested, and subsequently pleaded guilty to the murder, and received a life sentence. Red Watson decamped on the same evening of the shooting, to wit, May 1, 1927, and his whereabouts has since been unknown. We deem it unnecessary to detail at this point the record facts, for the special reason that the sufficiency of the evidence to sustain the verdict is not in question.

I. The appellant questions the theory of the trial of this case, and predicates reversible error on certain given instructions involving the challenged theory. In brief, the appellant argues that Bittner was tried for conspiracy. This contention cannot be sustained, under the law or under the facts of this case. A person accused as principal of any felony may be a co-conspirator, and the State may, in the prosecution of said felony, avail itself, as a matter of evidence, of a conspiracy theory, but at the same time invoke the theory of aider and abettor in the commission of the crime charged. See *State v. Mickle*, 199 Iowa 704. The defendant Bittner, in the instant case, was guilty of murder in the first degree, under the record, or not guilty of any crime. The cause was so submitted, and no included offenses were mentioned in the instruction. This was correct. It is true that the guilt of a person who aids and abets the commission of a crime must be determined from the facts which show the part he had in it, and does not depend upon the degree of another's guilt. *State v. Smith*, 100 Iowa 1. It is also true that all persons concerned in the commission of a crime, whether they directly committed the act constituting the offense or aided and abetted

its commission, may be jointly or severally indicted as principals. Section 12895, Code, 1927; *State v. Carlson*, 203 Iowa 90. In the *Carlson* case it is said:

"This is also true in proving the commission of a crime on the theory of conspiracy, or the crime of conspiracy itself. [Citing cases.]"

The instant indictment says nothing about a conspiracy. See *State v. Munchrath*, 78 Iowa 268. It was not necessary so to do, to make evidence of a conspiracy competent. The indictment does not name any other person except the defendant Bittner. It was not necessary to name any of the other parties in said indictment. It is said in *State v. Wolf*, 112 Iowa 458:

"It is undoubtedly true that one who conspires with another to do an unlawful act is equally as guilty as he who actually does the act, but it is not always true that one who aids and abets another is equally as guilty as the principal. The guilt of the former must be determined alone from the part he took in the transaction."

In the case at bar, the instructions given by the court to the jury are not so blended in the language used that it may be said that the jury was misled as to the court's meaning, and therefore the defendant cannot claim prejudice. It would be difficult, indeed, for a trial court, in the light of the evidence before us, to avoid all reference to the conspiracy evidence relating to the three parties who were *participes criminis* in the crime charged. The jury was fully warranted, under the evidence, on either theory, in returning a verdict of guilty as charged, and it may be said, in addition, that the defendant Bittner was fully protected by the court's instructions in relation to the conspiracy theory, and in one place it is said:

"But if there was no connection between the acts of the defendant, Frank Bittner, and the acts of Red Watson and Navin, as to the shooting, or if the attempted robbery, if one there was, upon the said George McIntire was not jointly done or participated in or countenanced by the defendant, Bittner, but the said Bittner was acting independently of and unconnected with Red

Watson and Austin E. Navin, then the defendant, Bittner, is not liable therefor, and your verdict must be 'not guilty.' ''

The murder charged was under Section 12911, which reads:

''All murder * * * which is committed in the perpetration or attempt to perpetrate any * * * robbery * * * is murder in the first degree * * *.''

It was this species of murder with which the court was dealing in the instant case. The evidence clearly discloses that there were three persons involved, although but one fired the shot when the holdup of McIntire was attempted; and it is evident that, after McIntire fired one shot in defense of himself and his property, Watson fired two shots, and fled the scene. It was the defendant Bittner who took Watson by auto to and from the scene of the murder at Fort Dodge, from which point Watson rode in his own car to Des Moines, and from which place he has not been traced. Bittner's accomplice, Navin, without any inducement or hope of reward, told the whole story of the crime, and his story is corroborated in many of the material facts and acts by other witnesses, and even in part by Bittner himself, who voluntarily told his story to the grand jury of Webster County. No question arises in this case as to the corroboration of this accomplice.

It is the claim of the defendant Bittner that he knew nothing of the purported scheme or conspiracy which the State attempted to prove, and did prove, but that he acted independently, and was not connected with Red Watson or Navin. The trial court, as heretofore pointed out, recognized his claim, and submitted same to the jury. In a subsequent instruction, in defining the term ''robbery,'' it is said:

''An attempt to perpetrate a robbery means that the defendant did an act or acts toward the commission of a robbery for that purpose, and with that intent, but with a failure in the perpetration thereof.''

This was an aiding and abetting instruction, and it was the province of the jury to determine, under all of the facts and circumstances, as disclosed by the evidence, whether the defendant Bittner was to be believed, or whether, pursuant to a conspiracy,

he actually aided or abetted the unlawful act resulting in the death of McIntire. The jury, under the instructions when read as a whole, could not, in our judgment, misunderstand or misconstrue the applicable law of the case, as given by the trial court.

II. Complaint is made of Instruction No. 16, relative to the consideration to be given what is termed "confession of facts" made by the defendant. It appears that, after Bittner  was arrested, Myron Tuller, the sheriff of Webster County, had a conversation with Bittner, at a time when the two men went down to the river to find the gun which Bittner said he threw out of his auto on the night of May 1st, and that the sheriff was informed by Bittner that he (Bittner) told "the damned fool [meaning Red Watson] not to hurt him [meaning McIntire]." It is also shown that Hi Yackey, a special state officer, working under the direction of the attorney-general of Iowa, was told by Bittner that he (Bittner) and Casey Navin and Red Watson were in the alley (where Bittner's Cadillac stopped immediately prior to the shooting of McIntire), and that he told Watson at that time not to hurt McIntire. The record also discloses that Lyle Tuller, son of the sheriff, and a deputy sheriff, overheard a conversation between Bittner and Clarence Darrow, the well known defender of persons accused of crime, but not of counsel in this case. The first thing he heard Darrow say to Bittner was: "How did they secure such a complete case against you?" Bittner answered: "Casey Navin has spilt everything. He was with us that night." These statements do not classify under the technical legal term, "confession," but they were admissions, or, as the trial court termed them, "statements or confessions of fact." They did tend to corroborate Navin as to some of the material facts stated by him to the trial jury, and these statements constituted the basis for the trial court in giving an instruction relative to these statements or confessions of fact. In this case it may be noted that Bittner, as a part of his defense, claimed that promises and inducements were held out to the defendant and Navin to secure these admissions or confessions of facts, and therefore that they were not freely and voluntarily given. Under the challenged instruction (No. 16), the court simply gave to the jury the law relative to such a situation, and told the jury that such a statement or confession of fact would

not warrant a conviction, unless accompanied by other evidence that the crime had in fact been committed as charged. The jury was further told that these statements "are to be examined by you with care, and it is for you, and you alone, to determine what weight shall be given to them, and they cannot be considered by you unless you find from the evidence, beyond a reasonable doubt, that the defendant made the statements constituting the alleged confession of facts, and that they were made by the defendant voluntarily and of his own free will, and with a full and perfect knowledge of the nature and consequences of the said confession of facts, if such there was." The trial judge, in the instant case, must have had before him the opinion in *State v. Brown,* 48 Iowa 382. The declared law of the case, supra, is still the law of Iowa. The trial court, in the instant case, properly guarded the defendant in every respect relative to the facts which tended to show his guilt of the crime charged.

III. The record discloses that the defendant, shortly after his arrest and incarceration in the county jail, slashed himself across the abdomen with a razor secretly handed him, and there-by severely wounded himself. The defendant's claim was that he suffered pain from certain adhesions caused by a prior operation, and on cross-examination, he could not tell what operation it was, when it was, or that he had ever suffered from adhesions prior to that time. The trial court instructed on this matter, and of this instruction complaint is made by appellant. This particular matter has never, prior to this time, been presented to this court. The instruction given was to the effect that evidence had been introduced on the part of the State tending to show that the defendant, while an inmate of the jail, inflicted a wound upon his person, and:

"If you find from the evidence, beyond a reasonable doubt, that the offense alleged in the indictment was committed at the time and place as so charged, and further, that the defendant knew that he was charged with the commission of said offense, and was arrested and placed in the jail of Webster County, Iowa, and you further find beyond a reasonable doubt that the wound inflicted by the defendant upon his person was inflicted by him for the purpose of committing suicide, then you are justified in

considering the said act of the defendant as a circumstance indicating guilt, to be considered by you in connection with all the evidence, to aid you in determining the guilt or innocence of the accused.''

The trial court further stated in said instruction that, if the State had failed to prove, beyond a reasonable doubt, that the wound inflicted by the defendant upon his person, if he did inflict such a wound, was inflicted for the purpose of and with the intent upon his part to commit suicide, the jury should give no consideration whatsoever to this testimony upon this point, and such testimony should be disregarded entirely. It will be observed that the court placed the burden upon the State to prove the self-inflicted wound and that defendant knew at said time that he was charged with the crime of murder, and particularly charged the jury that they must find that the wound was done for the purpose of committing suicide; otherwise, this evidence was not to be considered by the jury for any purpose. This surely was a fair instruction.

We find but four cases in the courts of last resort bearing on this proposition. Three of these cases sustain the instruction. We will not discuss these cases, and to avoid incumbering the record, it will be sufficient to cite them. *People v. Duncan,* 261 Ill. 339 (103 N. E. 1043) ; *State v. Jaggers,* 71 N. J. Law 281 (58 Atl. 1014) ; *State v. Blancett,* 24 N. M. 433 (174 Pac. 207). The only decision of an apparently contrary character is an early case found reported in *State v. Coudotte,* 7 N. D. 109 (72 N. W. 913). In that case, however, the only corroboration in the case was the attempted suicide, and the question arose, as stated in the opinion, whether or not ''any presumption of guilt'' arises from an attempt to commit suicide, made before trial. Such is not the question in the instant case. The contention of the State in the North Dakota case was that, when a party charged with crime attempts to commit suicide, ''that fact raises a presumption, more or less strong, that such party is guilty of the crime charged.'' In the case at bar, the trial court in instruction used no such language, and did not mention the word ''presumption.''

IV. The next complaint of the appellant is that two of the State's officers,—one the sheriff of the county, and the other a special agent, Yackey,—were in the court room during part of

 the trial. This point is predicated on the rule of the trial court excluding witnesses during the trial. The specific objection to Sheriff Tuller was that he was present in the court.room when he was called to the witness stand. This objection was overruled. Yackey, the state agent, had been one of the principal investigators in securing the facts, and was assisting the prosecuting attorney during the trial. Clearly, the sheriff had a right to be present, as an officer of the court. Mr. Yackey was a necessary person to assist the public prosecutor in the case. In any event, these matters rested in the sound discretion of the trial judge, and there is no abuse of discretion shown. This court will not presume error, and will, on the appeal taken by the defendant (under the provisions of Section 14010, Code of 1927) examine the record, ''without regard to technical errors or defects which do not affect the substantial rights'' of the defendant, and ''render such judgment on the record as the law demands.'' In the instant case, we will not reverse on the mere technicality, as the point raised does not affect the substantial rights of this defendant.

V. It happened that, at the time the defendant, Bittner, was in the care and keeping of the sheriff at the Webster County jail, Clarence Darrow, of Chicago, was in the city of Fort Dodge,  attending to some legal business. The defendant's mother, learning of the presence of Darrow, solicited him to interview her son (defendant Bittner). Out of the kindness of his heart, and probably due to his intense interest in the welfare of accused persons, he met the request, and did visit the defendant at the jail. The conversation was overheard by the son of the sheriff, who was then and there acting as a deputy. Darrow is quoted as making the following statement to Bittner:

''Well, I promised your mother that I would get over here and talk to you, but I am very tired. I have been very busy all day, and it is late; but I have just dropped in to give you a little encouragement, if I can, and suggest that you get an attorney, and fight to the last ditch.''

The only question presented on this proposition is whether

a confidential relation existed between Darrow and Bittner, and therefore what was said became a confidential commmunication. There is no basis in the record for such a claim. Darrow was not Bittner's attorney, and it is obvious that he visited the defendant in a friendly way, and on account of the request made by the mother. See *State v. Mickle,* supra.

VI. Complaint is made of the cross-examination of the defendant. We have read the abstract of appellant, but we have been aided more by the amendment to said abstract filed by appellee. It is an elementary principle that counsel for the State is privileged to cross-examine the defendant as to his previous history, his prior conduct, habits, and ways of living, as affecting his credibility, and for the purpose of impeaching him. *State v. Watson,* 102 Iowa 651; *State v. Brandenberger,* 151 Iowa 197. This matter is largely within the discretion of the court. True it is that the prosecutor asked one or two questions which were subject to objections. Proper objections were sustained. In one instance, the answer to such a question was given, and was promptly stricken, on motion. The prosecutor did not repeat the objectionable question.

This is not a case where complaint may properly be based by reason of the persistence of the prosecutor in repeating the questions to which objections had been sustained. See *Schuck v. Keefe,* 205 Iowa 365; *State v. Poston,* 199 Iowa 1073. A trial judge cannot anticipate the answers to be given by witnesses on cross-examination, even though it may be assumed that he should be able to distinguish between a proper and an improper question. However, in the instant case, there was, in our judgment, no toxic result. The court did all that it was possible to do, by sustaining the objection and striking from the record whatever was elicited that was deemed improper for the consideration of the jury.

VII. Lastly, it is contended by appellant that the court erred in refusing to compel the production of a written document, to wit, the written confession of the accomplice Navin. Counsel for the defendant, after it was discovered that the State had possession of this paper, asked the prosecutor if he would produce it, to which the reply was made, "No, produce noth-

ing.'' No *subpoena duces tecum* was issued, or requested to be issued, and no means known to the law was adopted by counsel for defendant to effectuate the request made by one attorney to another.

In the light of the record, we discover no basis upon which to predicate reversible error. The judgment entered is—*Affirmed*.

ALBERT, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.