STATE OF IOWA, appellee, v. DONALD LEE WHITE, appellant.

No. 52212.

(Reported in 151 N.W.2d 552)

1002

JUNE 6, 1967.

Ben E. Kubby, of Des Moines, for appellant.

Richard C. Turner, Attorney General, David A. Elderkin, Assistant Attorney General, and Ray A. Fenton, County Attorney, for appellee.

SNELL, J.— ▇ In the trial of a criminal case the basic question is or should be proof beyond a reasonable doubt of defendant's guilt. In establishing guilt there should be a thorough search for the truth and opportunity to the accused to refute the charge.

▇ We are in full accord with the principle that an accused is entitled to full information as to who and what he must face and to the benefit of process in his defense. This is well established in Iowa law and repeatedly announced by our decisions.

We are fully aware of recent pronouncements outlining safeguards surrounding an accused, making State procedures subject to Federal restrictions and requiring an adequate record for appellate review. See Entsminger v. State of Iowa, 386

U. S. 748, 87 S. Ct. 1402, 18 L. Ed.2d 501, decided by the Supreme Court of the United States May 8, 1967.

In the case before us we have the unique situation of a defendant caught in the act and convicted of breaking and entering complaining because he was denied access to evidence he thinks might aid his defense.

While we are reluctant to reverse on what may be only an imaginary loophole we are in the dark as to what the facts may be and must rule accordingly.

Because of our conclusion on procedural matters only a brief summary and no comment on the evidence is required.

Gene Tharp, a Des Moines Deputy Sheriff, assigned to the Identification Bureau in the sheriff's office and not ordinarily engaged in the capture of criminals, testified that shortly before midnight on November 4, 1965, he received the first of three telephone calls from the same person. He knew the caller slightly and had previously received unreliable information from him. After the third call to the effect that the caller had information about a possible breaking and entering Deputy Tharp and his wife met the informant at Lemmo's Grill in South Des Moines. He was told of a crime soon to be committed at the Bavarian Haus by armed men. After about 15 minutes he left and had no further contact with his informant.

Deputy Tharp by car radio contacted another deputy sheriff and a meeting was arranged. Within the next few hours, partly as a result of police radio calls and partly by mere coincidence, there was a rendezvous of officers in the area of Bavarian Haus. In all there were six deputy sheriffs, two highway patrolmen, and officers from Altoona and Ankeny. All except the officers from Altoona and Ankeny testified for the State as did the manager of Bavarian Haus.

Three men were seen to arrive at Bavarian Haus and get out of a car. One returned and drove away. The other two went to the rear of the building and disappeared therein. The officers found a broken window and entered. Upon searching the place defendant was found hiding in a walk-in cooler. Another man, Daniel Davis, was found hiding behind a jukebox.

Davis, at the time of trial, a prison inmate in Fort Madison on a different charge, testified for defendant. He told of being in contact with defendant and James Slater in a tavern on the evening of November 4, 1965. When asked about a proposition by Slater to break and enter a business establishment he "took the Fifth Amendment", refused to testify and was sustained by the court.

Defendant, testifying in his own behalf, told of meeting Davis and Slater. In detail he told of their activities and that Slater was the third man involved in the crime.

Defendant claimed entrapment by Slater working with the police.

Defendant asked for and obtained a subpoena for Slater but he was not found. Although the court did not permit divulging the name of Tharp's informant it is clear that defendant was trying to point to Slater.

Slater had been a frequent inmate of the county jail and a trusty around the courthouse. He was known to the sheriff's officers.

 It appeared without dispute that tape recordings of the officers' radio calls and conversations had been preserved. There is nothing in the record to show the nature thereof. Under the circumstances in this case and in light of defendant's claim of entrapment we think some inquiry should have been permitted to determine the existence of anything material to the issue.

Before trial defendant made written application alleging that conversations between officers and the state highway radio dispatch and radio control were germane to defendant's innocence.

He asked permission to review the tapes in the presence of law enforcement officials in charge to determine what might be germane.

The application and request for subpoena duces tecum was renewed at the beginning of the trial and overruled.

There is not a scintilla of evidence in the record before us that there is anything in the record of police conversations that would support defendant's claim. However, access to informa-

tion should not be denied because we do not know what it might be.

I. Many safeguards are provided by our law for the protection of an accused.

He is entitled to counsel. Counsel was provided.

He is entitled to compulsory process for the appearance of witnesses. He had such aid except for the subpoena duces tecum.

He was confronted by the witnesses for the State.

A defendant may be tried on a felony charge only upon indictment or information and the names of the witnesses and the minutes of their testimony must be endorsed thereon (section 772.3, Code of Iowa). No other witness shall be permitted to testify for the State unless notice thereof is given pursuant to section 780.10, Code of Iowa.

Under the provisions of chapter 776 of the Code an indictment may be set aside unless it conforms with the statutory provisions.

Under the provisions of section 773.6, Code of Iowa, when an indictment charges an offense, but together with the minutes of evidence filed therewith fails to inform the defendant of the particulars of the offense sufficiently to enable him to prepare his defense or give him such information as he is entitled to, he may upon motion obtain a bill of particulars.

■■ If a bill of particulars is asked for and filed the State is thereafter limited to proof of the acts indicated in such specifications. State v. Schuling, 216 Iowa 1425, 1428, 250 N.W. 588. By availing himself of statutory procedure a defendant not only knows the names of the persons to be called as witnesses for the State but the substance of their testimony and may be assured and guaranteed against surprise. He is also entitled to know the contents of documents the State intends to use against him. See State v. Burris, 198 Iowa 1156, 1162, 198 N.W. 82, and State v. Bittner, 209 Iowa 109, 118, 227 N.W. 601. Our law gives greater protection against surprise than many other jurisdictions.

Without suggesting that there has been any improper suppression of evidence in the case at bar we think that any suspicion thereof should be removed and that under the philosophy

of our law a defendant is entitled to the benefit of such information as the court finds may be material to the issue.

This is in accord with the provisions of Federal law and the pronouncements of the Supreme Court of the United States. 18 U. S. Code Annotated, section 3500, relates to demands, production of statements and reports of witnesses in criminal prosecutions.

Subparagraph (b) thereof provides:

"After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use."

Subparagraph (c) provides:

"If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. Whenever, any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examina-

tion of such statement by said defendant and his preparation for its use in the trial."

Subparagraph (e) provides that the term "statement" includes the stenographic, mechanical, electrical or other recording or transcription thereof.

This statute popularly known as the Jencks Act has been considered and discussed by the U. S. Court of Appeals, District of Columbia Circuit, in Lee v. United States, decided October 20, 1966, appearing in 368 F.2d 834. The court definitely frowned on anything even though done in good faith that might jeopardize the ability of an accused to defend himself.

Defendant conceded in his application "That under the Federal Communication Commission, the tapes recorded by police officials are not subject to public review unless so ordered by the Courts." Unfortunately police officers are required to investigate so many matters and make so many arrests that tape recordings of all activities even for a few hours would improperly disclose matters not germane to a particular issue. The Jencks Act recognizes that fact and places on the trial judge the duty of determining in camera what may be germane. This procedure protects the records from improper disclosure and at the same time protects a defendant against suppression of pertinent evidence.

We think comparable procedure should have been followed in the case at bar.

Until heard by the trial court and found germane we are not holding that the radio tapes should have been made available for the jury to hear. We are not holding that either defendant or his counsel was entitled to hear everything that might be recorded on the radio tapes during the period involved. Our holding is limited to the proposition that the court should have determined in the presence of the county attorney and counsel for defendant whether there was anything thereon germane to the issue of entrapment and if so it should have been made available to defendant for appropriate use.

II. The right of the prosecution to withhold the name of an informer has recently been considered by the Supreme Court of the United States. In McCray v. Illinois, 386 U. S.

300, 87 S. Ct. 1056, 18 L. Ed.2d 62, decided March 20, 1967, it was held that a defendant was not constitutionally entitled to the name of an informer under the Due Process Clause of the Fourteenth Amendment or under the Sixth Amendment right of confrontation, applicable to the states through the Fourteenth Amendment.

The McCray opinion discussed with approval Roviaro v. United States, 353 U. S. 53, 77 S. Ct. 623, 1 L. Ed.2d 639, wherein this appears:

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." A pertinent comment appears when in sustaining defendant's right to information the court said: "His testimony might have disclosed an entrapment."

■ III. Defendant claims error in the court's instruction on entrapment. He now argues that the instruction refers solely to law enforcement officers and does not include a plan and scheme set up by a private citizen i.e., Slater.

In the trial court defendant objected to the instruction as "too broad, inequitable and unfair to the defendant, in violation of his legal rights."

We find neither objections nor request in the trial court covering the point now argued. In State v. Jensen, 245 Iowa 1363, 1371, 66 N.W.2d 480, we said: "Although certain instructions were requested by defendant, the point under discussion here was included in none of them. * * * [Citations] The defendant's complaint is without merit."

Defendant cites no Iowa authorities in support of his argument that legal entrapment may be by a private citizen or an accomplice. The weight of authority is to the contrary. Henderson v. United States (5 Cir.), 237 F.2d 169, 175, 61 A. L. R.2d 666, considers the point and holds and cites authorities that the

defense of entrapment is restricted to law enforcement officers. See also State v. Jackson, 243 N. C. 216, 90 S.E.2d 507, 509.

Defendant was not entitled to an instruction to the effect now urged.

For recent annotation on entrapment see 10 A. L. R.3d 1121.

IV. Our comments in Division I, supra, are not an indication that we find any affirmative error in the record before us. Neither can we say that there has nor has not been an abuse of discretion because judicial discretion has not been exercised.

The trial court did not know and we do not know whether the police tapes would disclose matters or evidence that would be admissible, inadmissible or subject to the discretion of the trial court.

As we said in Division I, supra, a defendant is not entitled to unrestricted examination of police records. There are situations where a defendant is entitled to use records from which a witness has testified. See Barnard v. Cedar Rapids City Cab Co., 257 Iowa 734, 751, 133 N.W.2d 884. There are also situations where denial is within the discretion of the trial court. See State v. Hodge, 252 Iowa 449, 463, 105 N.W.2d 613, and Roviaro v. United States, supra, Division II.

In the case before us the police were not testifying from the records defendant sought to examine.

In the case at bar there was and is considerable discretion in the trial court, subject to review as to abuse, in determining what, if any, part of the police records should be disclosed to defendant's counsel on the issue of entrapment.

In view of the fact that defendant was found hiding in the cooler of the place he had broken and entered and offered no defense except entrapment by officers we find no need at this time to order a new trial or complete remand.

Defendant has had trial by jury aided by competent counsel. The evidence of his guilt as presented to the jury was overwhelming. Except for the possibility as indicated we find no error. We think there should be judicial inquiry into the existence in the police records as to evidence of affirmative entrapment by law enforcing officers.

We are not suggesting this as an ordinary procedure. Here

there was an unusual situation. There was reliance on an informer. A captured accomplice refused to testify. The driver of the car that brought defendant to the scene was never found. There were radio calls for help and a large number of officers involved.

The case is remanded to the district court for a review and determination of such police or law officer radio tapes as may be germane to the issue of entrapment in the offense here involved. As to the propriety of such procedure see Jackson v. Denno, 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed.2d 908, 1 A. L. R.3d 1205.

If evidence of entrapment is found the trial court is directed to order a new trial and make the evidence available to defendant or his counsel.

If there is no such evidence this case shall, upon the filing of a finding by the trial court to that effect, stand affirmed.

Defendant, of course, has the right to appeal from the ruling and judgment of the trial court as a final judgment.

This procedure, while perhaps unusual and we hope not too frequently necessary in Iowa, appears to us as eminently fair to the defendant, expeditious and not unnecessarily expensive and affording an opportunity for judicial review of an issue that we cannot determine from the record before us.

Remanded for further hearing and entry of appropriate judgment.

GARFIELD, C. J., and LARSON, MOORE, STUART and MASON, JJ., concur.

RAWLINGS, J., concurs in the result.

BECKER, J., dissents and would reverse on the basis of grounds considered in Divisions I, II and IV.