STATE of Iowa, Appellee,

v.

William Cotalious JOHNSON, Appellant.

No. 60174.

Supreme Court of Iowa.

Dec. 20, 1978.

Rehearing Denied Feb. 15, 1979.

Linda J. Thompson, Mt. Pleasant, for appellant.

Richard C. Turner, Atty. Gen., J. Susan Carney, Asst. Atty. Gen., and Steven S. Hoth, County Atty., for appellee.

Considered by REES, P. J., and UHLEN-HOPP, HARRIS, ALLBEE and LARSON, JJ.

REES, Justice.

Defendant was charged by county attorney's information with the crime of murder in the first degree, in violation of § 690.2, The Code, 1975. Following a verdict of guilty, he was sentenced, and appeals. We affirm on condition and remand with instructions.

Specifically, the defendant was charged with having murdered one Hobart Sharp. Following an exchange of words in a tavern in Burlington, the defendant drew a revolver and fired three shots, two of which struck the decedent. The defendant testified he shot at the decedent in self-defense, alleging Sharp had threatened him further testifying that Sharp had threatened other persons with a knife in another tavern on at least two other occasions. A pocketknife was found at the scene of the shooting, but there was no direct evidence to connect the victim with the ownership of the knife. One of the investigating officers, Detective Robert Stevens, testified over a hearsay objection that decedent "did not have any kind of weapon at all" at the time of the shooting. Twelve eyewitnesses, including the defendant, testified concerning the shooting and the circumstances which led up to and followed the event. No witness was able to testify that he or she had seen the knife in the hands of Sharp, but neither was testimony elicited stating positively that decedent was not armed with a knife. The defendant alleges that the only direct testimony to the effect that Sharp did not have a knife came from Detective Stevens, who was not present at the time of the shooting.

The State concedes in this appeal the testimony of Stevens in this regard was

inadmissible hearsay testimony, but contends the admission of the same was harmless error.

About 30 minutes following the shooting, defendant was arrested at the home of one Lorraine Meriweather in Burlington. At the time of his arrest Johnson stated that he had thrown the gun in the river. The firearm was later found, as the result of information volunteered by Ms. Meriweather, in her dwelling. No other statement was made by Johnson at the time of his arrest. On direct examination of the police officers, the prosecuting attorney asked if the defendant had made any statements other than to the effect that he had thrown the gun in the river. All of the witnesses testified that he had not made any further statement. During closing argument the State made reference to the fact that defendant had admitted nothing prior to his testimony at trial. Following the filing of the county attorney's information, defendant filed a motion asking the court to require the county attorney to produce certain evidentiary material and other information alleged to be necessary for the defendant's defense, including copies of all signed statements of any persons relating to the alleged offense or to the defendant which were then in the possession of the State, and the names and addresses of all persons known to the State who had any knowledge or information concerning the facts of the alleged crime or relating to defendant's guilt or innocence, including the names and addresses of all persons who had knowledge of any exculpatory evidence in possession of the State regarding the defendant. The motion was overruled with respect to the items referred to above.

The following issues are stated for review:

(1) Was the admission of hearsay testimony by an investigating officer that the decedent Sharp was unarmed harmless error, when a knife was found at the scene and no witnesses could state positively whether or not the knife had been in the possession of the decedent Sharp?

(2) Was the defendant's exercise of his constitutional right to remain silent improperly referred to by the prosecutor to create an inference of guilt when several police officers were permitted to testify to the defendant's silence at the time of his arrest, and when, during closing argument, the State made reference to the fact that defendant had waited until trial before making any admissions? Was this issue waived by the defendant in failing to object at the trial level?

(3) Was defendant improperly denied the opportunity to discover possible exculpatory material by the overruling of his pretrial motion to compel production of signed statements taken by investigating officers and the names and addresses of persons having knowledge of the alleged crime?

I. The defendant first challenges the admissibility of a certain portion of the testimony of Officer Robert Stevens to the effect that, from the statements he had gathered from those present at the scene of the shooting, "Mr. Sharp, that was shot, did not have any kind of a weapon at all." This testimony was clearly hearsay. *State v. Menke*, 227 N.W.2d 184 (Iowa); *State v. King*, 225 N.W.2d 337 (Iowa). Objection thereto was timely made, and overruled by the court. The State concedes the trial court erred in overruling the objection to the foregoing testimony but asserts that the admission of the testimony constituted harmless error.

■ Error in the admission of hearsay is presumed to be prejudicial unless the contrary is affirmatively established. *State v. Menke, supra,* at 188. Although not specifically in the hearsay context, we have stated that prejudice will not be found where substantially the same evidence is in the record without objection. *State v. Gilmore,* 259 N.W.2d 846 (Iowa). The State alleges that in the case at bar there is a considerable body of evidence in the record, without objection, to the effect that the decedent was not armed, and a close scrutiny of the record leads us to conclude the State's contention in this regard is correct.

■ While it is true a small knife was found about ten feet from the victim's body in the tavern and that the police could not establish the ownership of the knife among those present at the time of the shooting, it remains clear from the record there is a great deal of testimony substantially corroborative of Officer Stevens' statement to the effect the victim was not armed. We are mindful of the fact Stevens' testimony was given in the context of the knowledge he had gained during the course of his investigation of the shooting. A paraphrasing of Stevens' testimony might be said to be as follows: "On the basis of my interviews with the witnesses to the shooting, I would conclude that Mr. Sharp did not have any kind of weapon at all." Eleven witnesses to the shooting testified they had seen no knife in Sharp's hands at the time of his confrontation with the defendant. Admittedly, some of the witnesses could not testify that Sharp did not have a weapon in his hand, which fact could be partially explained by the dim lighting in the tavern. Even the testimony of the defendant was to the effect that he had at no time seen a knife in Sharp's possession.

There are independent sources of the same line of testimony, which came into the record without objection, similar to the testimony of Officer Stevens. Detective Ingrahm testified that in the course of his investigation he came across no evidence to indicate the decedent was armed with a deadly weapon, and Detective Smith testified that his investigation reflected no indication the decedent was armed.

After a full consideration of the record, we conclude there is substantially the same information therein as that to which Officer Stevens testified, namely, that there was no indication at the time of the shooting that the victim Sharp was armed with a weapon. We conclude the admission of Officer Stevens' statement was harmless error in light of the multiplicity of other sources of information which duplicate his testimony.

II. In his next issue stated for review, the defendant contends the prosecution placed impermissible emphasis on defendant's silence at the time of his arrest, both during the case-in-chief and during closing argument to the jury. In questioning the police officers who were present when the defendant was arrested, the prosecution asked whether Johnson had made any statement other than the one to the effect that he had thrown the gun in the river. All of the officers answered such interrogatories in the negative.

■ It is true defendant was entitled to rely on the right to silence guaranteed him by the Fifth Amendment to the United States Constitution, *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653, and that the State may not impose a penalty upon the defendant for exercising such a right, *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106. Our examination of the transcript of the testimony leads us to conclude the prosecution did not in any way use the statements of the police officers in and of themselves to draw an unfavorable inference concerning the defendant's guilt or innocence. Cf. *State v. Canada*, 212 N.W.2d 430 (Iowa). Regardless of the merit of his contention, Johnson failed to preserve error as to the trial testimony of the officers due to his failure to object to their testimony. Consequently, his failure to object operates as a waiver of any improprieties in the testimony. *State v. Harmon*, 238 N.W.2d 139, 143 (Iowa); *State v. Hall*, 235 N.W.2d 702, 727 (Iowa); *State v. Johnson*, 223 N.W.2d 226, 228 (Iowa). Without proper objection, such issue is not before us.

We now turn to defendant's other claim that the prosecution made reference during closing argument to defendant's invocation of his Fifth Amendment rights to silence to draw an inference of guilt. In the course of his closing argument to the jury, the County attorney said:

"Now the question has been raised, well, what is the use of all these pictures and all of the expert testimony. We . . . remember the expert testimony wasn't admitted by the defendant until such time as the experts appeared and were ready to testify. The defendant

didn't admit that he had written his signature on the form or whatever until such time as the people were there on the stand that saw him write it, and the people were there that could testify that this was the same signature as other signatures that the defendant made, and were prepared and ready to testify. Not until this happens did the defendant admit to anything."

The State contends error was not preserved concerning the closing argument since no objection was made by the defendant at the close of the argument or at the time the statement was made by the prosecution. Defendant admits no objection was made at trial, but urges us to adopt the "clear constitutional error" standard enunciated by the First Circuit Court of Appeals in *United States v. Flannery*, 451 F.2d 880, and by the Tenth Circuit Court of Appeals in *Deats v. Rodriguez*, 477 F.2d 1023, and to hold that comments by a prosecutor in closing argument which are violative of the accused's Fifth Amendment rights need not be objected to in order to preserve error.

Defendant cites two reasons supporting the adoption of the standard urged by defendant: (1) the error alleged is of such an obvious and fundamental nature that it cannot, generally, be inadvertent or unintentional; and (2) any objection made at the conclusion of the closing argument would serve only to emphasize the prejudice and to concentrate the attention of the jury on the defendant's exercise of his Fifth Amendment rights. We do not find these arguments compelling in the case at bar.

■ There is no indication in the present case that any error in the prosecutor's closing argument was an intentional deprivation of the defendant's constitutional rights. As to the second ground, a timely objection may, if justified, result in the trial court giving a limiting instruction to the jury. If the improper reference is so inflammatory or prejudicial that the effectiveness of a limiting instruction would be subject to question, the defendant should move for a mistrial. Adequate remedies do exist at the trial court level and should be exercised at appropriate times.

■ Like the aforementioned alleged error regarding the testimony of the arresting officers, no timely objection was made and the issue was thus not preserved for review. We have long held that error must be preserved as to final arguments before appellate review may be had. *State v. Olson*, 249 Iowa 536, 555, 86 N.W.2d 214, 230; *State v. Rutledge*, 243 Iowa 179, 199, 47 N.W.2d 251, 263, and 50 N.W.2d 801, 802. We have also held that constitutional questions must be preserved in the same manner as any other issue. *Long v. Long*, 255 N.W.2d 140, 144 (Iowa); *Speed v. Beurle*, 251 N.W.2d 217, 219 (Iowa); *State v. Wisher*, 217 N.W.2d 618, 620 (Iowa). We therefore do not reach the merits of defendant's allegations concerning the prosecutor's closing remarks.

■ III. The defendant next contends the trial court erred in overruling defendant's motion to produce evidentiary materials as to the following paragraphs:

"(2) True copies of all signed statements of any person relating to the alleged offense or which relate to the Defendant now in possession of the State of Iowa;

"(12) The names and addresses of all persons known to the State of Iowa who have knowledge or information concerning the facts of the alleged crime or relating to the Defendant's guilt or innocence, including the names and addresses of all persons who have knowledge or any exculpatory evidence in the possession of the State of Iowa regarding Defendant."

Defendant asserts the statements and the names of witnesses sought to be produced were necessary for a full investigation and that the prosecutor, even acting in good faith, may not be able to evaluate which evidence is exculpatory, especially when the prosecutor is not apprised of the defenses to be asserted.

The testimony of two of the State's witnesses corroborated, to some extent, the defendant's theory of self-defense, namely, that the defendant was backing away from

the victim at the time of the shooting. The testimony of others present at the commission of the offense could likewise be supportive of defendant's theory. The record indicates that there were 18 or 20 people present in the tavern at the time of the shooting, 14 of whom were called to testify at trial. The defendant, lacking a list of names of those present, had no access to the content of the statements of those who were not called to testify.

This court, following the holding in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, has consistently held that a defendant is entitled to exculpatory material in the hands of the State. *State v. Hall*, 235 N.W.2d 702 (Iowa); *State v. Peterson*, 219 N.W.2d 665 (Iowa); *State v. Eads*, 166 N.W.2d 166 (Iowa); *State v. White*, 260 Iowa 1000, 151 N.W.2d 552.

In both *Hall* and *White*, we remanded to the trial court for an *in camera* review of the materials sought by the defense with counsel for both the prosecution and the defense present. Such would be proper in this case as the defendant should have been allowed to ascertain whether the statements taken by the police were exculpatory in nature.

If such evidence has been suppressed, the defendant will be entitled to a new trial. *State v. Houston*, 209 N.W.2d 42 (Iowa); *State v. Hall, supra*; Cf. *Johnson v. Superior Court*, 15 Cal.3d 248, 132 Cal.Rptr. 32, 539 P.2d 792.

Concluding that defendant's motion to produce exculpatory material was improperly overruled, we remand for an *in camera* proceeding consistent with division III of this opinion.

If it is found that exculpatory material was withheld from the defendant, then a new trial shall be granted. If not, the judgment shall stand affirmed. This is the procedure approved in *White, supra*, and *Hall, supra*. Defendant's right to appeal from the trial court's *in camera* determination is preserved.

AFFIRMED ON CONDITION AND REMANDED WITH INSTRUCTIONS.