STATE of Iowa, Appellee,

v.

William Eugene GROSCOST, Appellant.

No. 67643.

Supreme Court of Iowa.

Aug. 22, 1984.

Charles L. Harrington, Appellate Defender, Des Moines for appellant.

Thomas J. Miller, Atty. Gen., Sherie Barnett, Asst. Atty. Gen., and Jim P. Robbins, County Atty., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, LARSON, and SCHULTZ, JJ.

REYNOLDSON, Chief Justice.

Following jury trial, defendant William Eugene Groscost was convicted of two counts of first-degree murder, violations of Iowa Code section 707.2. He has appealed from a judgment imposing concurrent life sentences and we now affirm.

At trial the uncontroverted evidence disclosed that Robert and Helen Bargenquast were murdered in their Boone, Iowa, home on January 7, 1980. The victims were Amway dealers and had represented themselves as enjoying great financial success from their Amway dealership. Defendant ultimately admitted he visited the Bargenquast residence on January 7, and claimed his purpose was to discuss his own prospects as an Amway representative. Defendant's brother, Jon Groscost, and defendant's cocaine supplier, Randeepa Kidd, Jr., testified he admitted his guilt to them. Kidd further testified defendant told him he went to the home to rob the victims. The brother testified defendant told him he took fourteen dollars from the house. Other evidence was produced to show defendant had no employment or other means to support his cocaine habit.

Defendant alleges district court committed several errors relating to pretrial, trial discovery, and the admission of evidence. These contentions, and the factual back-

ground of each, are discussed in the divisions that follow.

### I. Officers' Notes and Summaries Relating to Interviews With Defendant.

Defendant asserts trial court erred in refusing to allow him to examine, for exculpatory, impeaching or inconsistent evidence, the notes and reports of department of criminal investigation agents Downs, Swaim and Kemming relating to interviews with defendant, and further erred in refusing to make these papers part of the record for appeal.

■ Preliminarily, we note the State provided defendant with his own statement taken by DCI officers, and a tape recording of his discussion with one agent. Further, we review trial court's rulings on such discovery demands by applying an "abuse of discretion" standard. *State v. Kase*, 339 N.W.2d 157, 159 (Iowa 1983); *State v. Houston*, 209 N.W.2d 42, 46 (Iowa 1973).

Iowa Rule of Criminal Procedure 13(2)(a)(1) requires production of defendant's own written or recorded statements where relevant. Rule 13(2)(b)(1), however, provides only for defendant's "discretionary discovery" of "papers, documents, [and] statements ... which are within the possession ... of the State, and which are material to the preparation of his or her defense." We have written that "[t]he decision as to production must rest in each case with the good sense and sound discretion of the district court with an eye toward obtaining an expeditious and fair criminal trial." *Kase*, 339 N.W.2d at 160; *see Houston*, 209 N.W.2d at 46.

An overall view of the record discloses defendant's pretrial motion to produce these and other materials constituted an attempted dragnet sweep of the prosecution's files of the type we have condemned so frequently. *See, e.g., State v. Mark*, 286 N.W.2d 396, 402 (Iowa 1979); *State v. Hall*, 235 N.W.2d 702, 731 (Iowa 1975), *aff'd following remand*, 249 N.W.2d 843, *cert. denied*, 434 U.S. 822, 98 S.Ct. 66, 54 L.Ed.2d 79 (1977).

At trial defendant called agent Wood as a witness. During Wood's testimony defendant renewed his requests for the agents' notes and reports of interviews with defendant on January 16, 21 and 23, and February 6, 1980. The record reflects the first three interviews were conducted by agent Downs. Agent Swaim was present for the January 21 interview, agent Kemming accompanied Downs on January 16 and 23. The last interview was recorded by agent Wood and defendant was provided with a transcript of that recording. After calling Swaim and Kemming as his own witnesses, defendant in each instance made a motion for the DCI summary of the interview each attended. When the same request was made while Wood was on the stand, it became apparent the defense wanted to know if agent Downs asked defendant whether he smoked Virginia Slims cigarettes. The court agreed to read the material in the evening. Trial court reported back that no such question was asked, and detailed the scope of the questions that were asked relating to smoking. Trial court then denied defendant's renewed requests to read this material, and to seal the notes and summaries as a part of the record.

Defendant apparently views his trial requests for the DCI agents' notes and summaries as a demand for Jencks Act materials. *See Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957); *State v. Horn*, 282 N.W.2d 717, 721 (Iowa 1979); 18 U.S.C. § 3500 (1982); Fed.R.Crim.P. 26.2.

Clearly, discovery of police reports has been a fruitful source for alleged error and ground for appeal to this court. *See State v. Henderson*, 272 N.W.2d 492, 493–94 (Iowa), 268 N.W.2d 173, 179, *reh'g denied*, 272 N.W.2d 492, 493–94 (1978); *State v. Jacoby*, 260 N.W.2d 828, 839 (Iowa 1977); *State v. Deanda*, 218 N.W.2d 649, 651 (Iowa 1974); *State v. Mayhew*, 170 N.W.2d 608, 613–14 (Iowa 1969); *State v. Galloway*, 167 N.W.2d 89, 91–93 (Iowa 1969); *State v. Eads*, 166 N.W.2d 766, 773–74 (Iowa 1969); *State v. White*, 151 N.W.2d 552, 555–56 (Iowa 1967).

From these cases certain principles emerge. We early denied the accused routine pretrial access to police investigation reports. *Eads*, 166 N.W.2d at 774. Following adoption of Iowa Rule of Criminal Procedure 13(2)(b)(1), such material is made available before trial, if at all, only upon proper motion and the exercise of the court's sound discretion. *See Kase*, 339 N.W.2d at 159.

■ When the reporting officer has testified for the State, however, the general rule requires that upon defendant's demand the court should examine the report in camera, in the presence of attorneys for both parties, to determine whether any of the material is germane to the witness's direct testimony. If so, it should be supplied to defense counsel. *Jacoby*, 260 N.W.2d at 839; *State v. Thornburgh*, 220 N.W.2d 579, 587 (Iowa 1974); *Deanda*, 218 N.W.2d at 651; *Mayhew*, 170 N.W.2d at 614; *see White*, 151 N.W.2d at 557. Where the court refuses to supply all or a portion of the report to the defense, it should be preserved and certified to this court as part of the record on appeal. *Jacoby*, 260 N.W.2d at 840; *Mayhew*, 170 N.W.2d at 614.[1]

We conclude the above general rule, following the *Jencks* concept, does not apply with respect to any reports prepared by Kemming and Swaim. By its terms the Jencks Act requires production of a statement "after a witness *called by the United States* has testified." 18 U.S.C.A. § 3500(b) (emphasis added). *See also* Fed. R.Crim.P. 26.2, requiring production of a witness's statement "on motion of a party *who did not call the witness*" (emphasis added). Here neither Kemming nor Swaim were called by the prosecution; they were called by defendant. To adopt defendant's position relative to reports made by these agents would allow a defendant virtually unlimited access to prosecution files through the ruse of calling investigating agents as defense witnesses. It was Congress' fear that trial courts would expand the *Jencks* decision that led to the enactment of the Jencks Act, which protects the "disclosure of memoranda containing the investigative agent's interpretations and impressions [that] might reveal the inner workings of the investigative process and thereby injure the national interest." *Palermo v. United States*, 360 U.S. 343, 350, 79 S.Ct. 1217, 1223, 3 L.Ed.2d 1287, 1294 (1959); *see State v. Schlater*, 170 N.W.2d 601, 606–07 (Iowa 1969); *State v. Galloway*, 167 N.W.2d 89, 91–93 (Iowa 1969).

■ The Jencks Act was not designed to implement a constitutional mandate, but rather to prescribe rules of evidence governing trials before federal tribunals. *United States v. Augenblick*, 393 U.S. 348, 356, 89 S.Ct. 528, 533, 21 L.Ed.2d 537, 545 (1969). Although we are not bound by its language, *Stanford v. Iowa State Reformatory*, 279 N.W.2d 28, 32 n. 1 (Iowa 1979), we adopt the Jencks Act feature that permits a motion for production of a statement only after the person who prepared the statement has testified for the prosecution. *See United States v. Wright*, 489 F.2d 1181, 1189 (D.C.Cir. 1973) ("By its express terms the [*Jencks*] Act has not application whatsoever to defense witnesses...."). Accordingly, we find no error with respect to any reports Kemming or Swaim may have made.

■ Nor do we find any error in the failure to provide defendant with agent Downs' reports. Defendant made no motion for such production after Downs' direct testimony for the State, nor even after

---

1. Our rule thus follows federal decisions that proceed on the premise the reports of investigating officers are Jencks Act "statements" of the officers and potentially available on defendant's motion if the reporting officers are called as prosecution witnesses. *See, e.g., United States v. Parker*, 549 F.2d 1217, 1224 (9th Cir.), *cert. denied*, 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977); *United States v. Harris*, 543 F.2d 1247, 1250 (9th Cir.1976). There is a split of authority among the circuits on the obligation of investigating officers to preserve preliminary notes from which the reports are prepared. *Compare United States v. Harrison*, 524 F.2d 421, 433 (D.C.Cir.1975) (rough notes must be kept) *with United States v. Martin*, 565 F.2d 362, 363 (5th Cir.1978) (destruction of notes no violation of *Jencks Act*).

his cross-examination. *See Mark*, 286 N.W.2d at 402 ("However after [the] agent ... testified on direct examination at trial, defendant did not ask to see the notes and statements ... to which defendant then would be entitled...."). It was not until defendant had called and examined agent Wood that defendant moved the court to require the State to produce, for the court's inspection, agent Downs' "interviews ... to determine whether there are inconsistencies within those interviews and whether there is impeachable material within those interviews, [a]nd then to allow the defendant to inspect the interviews." Further colloquy narrowed the issue to the Virginia Slims question referred to above. Although trial court made the examination and reported to defense counsel, we find any error in not permitting counsel to read the reports or in not sealing them for appeal purposes was waived in the circumstances described above.

II. *Officers' Notes and Interview Summaries Relating to Other Witnesses.*

Defendant contends trial court erred in overruling his pretrial and trial requests for production of DCI interviews with eight prosecution witnesses as well as the notes taken by DCI agents at those interviews. The defendant also contends the trial court erred in refusing to conduct an in camera inspection of these materials, and in refusing "to include some of these materials in the record."

When the pretrial dragnet motion was overruled, defendant made a bifurcated trial motion, in essence requesting the court before the cross-examination of each witness to examine the State's file with respect to that witness to determine if the report or the investigator's notes disclosed any contradicting or impeaching evidence. Further, the defendant moved the court "prior to the State resting [to] examine those witness' files ... for the purpose of exculpatory" material. Overruling the motion, the court appeared to deny the motion except as to the agents' reports following their testimony. The State at an early stage of these proceedings asserted "the case file reaches at least two feet in height at this point." The trial court at another time questioned its ability to discern inconsistent or impeaching evidence when it did not know defendant's theory of defense.

The matter next arose following the direct testimony of State's witness Madelyn Tonsfeldt, a friend of the victims. Defendant moved the court to examine her DCI interview sheets and notes to determine whether there was any "contradictory, impeachable or exculpatory evidence." The prosecutor pointed out the witness had never seen nor acknowledged the agent's summary of her testimony. Trial court noted "there will be something between fifty and sixty witnesses," that it had been advised at least five agents had interviewed one witness, the request was onerous for the court, and under neither *Horn* nor *Houston* would the court be required to carry out such a request. He agreed that if there was "an affirmation of a statement, a sworn statement or a recorded statement" that "they would be entitled to the statement."

■ Our division I discussion of trial court's pretrial ruling applies here. In view of the breadth of defendant's pretrial request and his failure to show a genuine need for any of the material requested, we cannot label trial court's ruling an abuse of discretion. It is clear that our decisions following the *Jencks* rationale did not require the court to sustain defendant's motion. Those decisions, like the Jencks Act, require production only of statements. The law in this area has been well summarized in *Horn* where we explained:

> In order for statements to be subject to the *Jencks Act* procedures, which we have approved, it is necessary that they be written statements made by the witness and signed, or otherwise adopted or approved by the witness, or that they be a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously

with the making of such oral statement. The distinction between a statement made by a witness and one that is an imprecise summary of what another understood the witness to say has been made on the federal level as well as in Iowa.

282 N.W.2d at 721.

Defendant's brief concedes "that reports and summaries may not be proper impeachment," but maintains he was the proper party to determine whether legitimate impeachment material appeared. We find no support in our decisions nor the federal cases for defendant's position. In *United States v. Robinson,* 585 F.2d 274, 280–81 (7th Cir.1978), *cert. denied,* 441 U.S. 947, 99 S.Ct. 2171, 60 L.Ed.2d 1051 (1979), the seventh circuit required a defendant seeking Jencks Act material to "meet the burden of specifying with reasonable particularity ... that a certain document exists, that there is a reason to believe that the document is a statutory 'statement,' and that the government failed to provide it." The court added that "[s]peculation as to the existence of ... documents is not sufficient to require an *in camera* investigation." *Id.* at 281 (emphasis in original).

■ Defendant also argues he would be entitled to exculpatory material even if it appeared in DCI agents' notes, and trial court committed error by refusing to search for it. However, the State convincingly points out that defendant's entitlement to exculpatory material is "a separate issue from whether defendant was entitled to have the court look through the State's files to determine if exculpatory material existed." *See United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342, 354–55 (1976); *Hamann v. State,* 324 N.W.2d 906, 911 (Iowa 1982). The State turned much material over to defendant as potentially exculpatory. The special prosecutor stated for the record that the State was "not in any way attempting to hide anything." This court has limited the overzealous defense counsel's claims to unlimited discovery for exculpatory material in *Hall,* 235 N.W.2d at 731 ("We have held a defendant is not entitled to all information in the prosecutor's file and that dragnet requests for information are properly refused."). *See also Eads,* 166 N.W.2d at 774 ("We do not foreclose the possibility that a defendant may be entitled to a particular statement .... However, ... this must be more than 'a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime.' ").

Defendant's demands that the State's files be rummaged for unidentified alleged exculpatory evidence must be reviewed against the extensive discovery disclosed by the record in this case. Defendant was provided with two experienced attorneys. A well-known professional investigator was hired at public expense and paid thousands of dollars. The defense was provided with the names of all potential State witnesses, and access to physical evidence and expert's reports. Unlike the federal criminal procedure where depositions may not be taken for discovery but only to preserve evidence,[2] the Iowa criminal procedure permits discovery depositions. *See* Iowa R.Crim.P. 12. The record reflects this defendant took approximately forty-seven discovery depositions, including those of the agents mentioned in division I.

■ In the final analysis, "it is not only the defendant who is entitled to a fair trial. Society, too, represented by the prosecution has an equal right to one." *Eads,* 166 N.W.2d at 771. We hold trial court did not abuse its discretion and committed no error in its refusing of defendant's pretrial and trial requests. Thus any error in failing to include the disputed material in the record is irrelevant.

### III. *The Cross-Examination Issue.*

Randeepa Kidd, Jr., defendant's cocaine supplier, testified concerning business rela-

---

**2.** *See* Fed.R.Crim.P. 15; 2 C. Wright, *Federal Practice and Procedure: Federal Rules of Crimi-* *nal Procedure* § 241 (2d ed. 1982).

tions with defendant, defendant's need for money to support his habit, Kidd's procurement of a .22 caliber pistol for defendant, and defendant's admission he killed some people in Boone. During his cross-examination, the following exchange occurred:

Q. He assumed that you had good [cocaine] connections? A. I knew the people that had it.

Q. And you did have good connections. A. Yeah.

Q. Who was the connection?

MR. DUTTON: That's really not necessary to be a part of this record. I think it's irrelevant.

MR. TERRILL: I think it is relevant, goes to credibility of the witness, Your Honor.

THE COURT: I don't think it's relevant. I don't think it's necessary for this record.

Defendant contends trial court abused its discretion in sustaining the State's objection.

■ It is true that Kidd's testimony about defendant's drug use supported the State's theory of robbery as a motive, but it is also true that defendant's brother testified as well that defendant "was into [cocaine] pretty good." More importantly, the identity of Kidd's supplier would have done nothing to bolster or destroy his credibility unless the jurors had sufficient knowledge of the Des Moines drug scene to evaluate his response. Identity of Kidd's "connection" would only have provided the defense with an opportunity of questionable value to impeach him on a collateral issue.

"The basic test of relevancy is whether the evidence offered would render the desired inference more probable than it would be without the evidence." *State v. Sparks,* 238 N.W.2d 777, 779 (Iowa 1976). Even if defendant's investigator had heard the supplier's name, tracked down the individual mentioned, and produced him in court to deny Kidd's statement, the jury would not have been likely to infer that Kidd was lying about defendant's drug use.

■ "The scope and extent of cross-examination is subject to the considerable discretion of the trial court," *State v. Masters,* 261 Iowa 366, 370, 154 N.W.2d 133, 136 (1967), and "[w]hen defendant's questions ask for irrelevant information, no error lies in curtailing such cross-examination." *State v. Davis,* 269 N.W.2d 434, 439 (Iowa 1978).

This is not a case like *Gibb v. Hansen,* 286 N.W.2d 180 (Iowa 1979), relied on by defendant, where the supplier's account of his transactions with the witness would make or break defendant's entire defense that he did not make a profit in the three deliveries charged. This is a case where the supplier's account at best would have a minimal effect on the witness's already corroborated testimony of defendant's drug use. Trial court committed no error in sustaining the State's relevancy objection.

IV. *The Hypnosis Issue.*

State's witness Judith Zanker was the victims' neighbor who provided a sketchy description of a man she saw approach the victims' house and gain admission on the morning of the homicides. She was interviewed on the same day by a DCI agent and on two subsequent occasions. Later she was hypnotized on two occasions in an attempt to enhance her recollection.

Trial court refused the defense copies of the agents' interview summaries, but allowed access to the hypnosis transcripts. However, the court cautioned they were not to be used for impeachment, but solely to guard against inadvertent cross-examination in "areas that maybe [you] do not want to go into with this witness."

Defendant here asserts that the trial court erred in allowing Zanker to testify after she had undergone hypnosis, and that the State failed to lay a proper foundation to show her testimony did not substantially differ from what she would have otherwise stated. Finally, defendant asserts trial court abused its discretion in refusing to allow defendant to cross-examine Zanker using the transcripts of her interviews while under hypnosis.

Defendant's assertion that Zanker was an incompetent witness was answered in *State v. Seager*, 341 N.W.2d 420, 432 (Iowa 1983).

In finding competency following the hypnotist's foundational testimony, the court noted it had reviewed the interview of the witness "and the Court believes that the witness is going to testify as she advised ... the law enforcement officials on the evening of the crime."

 The pre-hypnosis DCI interviews with this witness, as well as the transcripts of her hypnosis interviews, were read by the court before its ruling and sealed for review by this court. We find, as did trial court, that Zanker testified substantially in conformance with her pre-hypnosis interviews. The transcripts of Zanker's interviews under hypnosis clearly show the hypnotist made no suggestions as to what Zanker should recall. We held in *Seager* that "if the trial testimony of the witnesses ... is substantially the same as that provided in statements to the police ... prior to their being hypnotized ... such testimony should be deemed admissible." 341 N.W.2d at 431. We find no error with respect to trial court's competency finding. *See State v. Whitfield*, 315 N.W.2d 753, 755 (Iowa 1982) ("A trial court ruling on a competency question is discretionary and will be reversed only if an abuse of discretion is shown.").

On this appeal defendant asserts Zanker's testimony should not have been received absent a foundational showing her testimony would comport with her earliest interviews. We need not reach this contention because of our finding her testimony was substantially the same as her first recollections.

Nor are we persuaded by defendant's argument that Zanker's testimony was highly prejudicial in that she was "the only witness called by the State who allegedly saw a man fitting [defendant's] description enter the [victims'] home on the day of the murders." Other witnesses testified to defendant's own admissions that he was not only in Boone but in the victims' home on the day they were shot.

We hold trial court did not err in denying defendant the right to use the transcript or Zanker's interview while under hypnosis.

We have considered all arguments raised by defendant even though we have not discussed them in this opinion, and find no ground for reversal. The judgment of the district court is affirmed.

AFFIRMED.