The **WESTERN FIRE INSURANCE COMPANY**, Plaintiff and Appellant,

v.

**NATIONAL UNION FIRE INSURANCE COMPANY**, Defendant and Appellee.

No. 71-1701.

United States Court of Appeals, Ninth Circuit.

April 11, 1973.

Rehearing Denied May 2, 1973.

J. Gordon Cook (argued), Renaud, Cook, Miller & Cordova, Phoenix, Ariz., for appellant.

Richard A. Black (argued), Phoenix, Ariz., for appellee.

OPINION

Before CHAMBERS and HUFSTEDLER, Circuit Judges, and FERGUSON,* District Judge.

CHAMBERS, Circuit Judge:

During the night of May 4, 1967, Leonard Monti, Jr., shot his mistress. It happened in their restaurant bedroom. Successively he had two theories. First, he said it must have happened while he was asleep. Later, he remembered that he shot her, believing mistakenly in the dark that he was shooting at a burglar. As a result, the girl is a helpless quadriplegic. Now, at the instance of two insurance companies we must sift through the ashes of the tragedy.

Monti, Jr., is a member of the Monti family which has operated La Casa Vieja, a noted Mexican restaurant at Tempe, Arizona, for many years. The restaurant's corporate name was Monti's La Casa Vieja Restaurant, Inc. Leonard Monti, Sr., obviously was the dominant figure in the operation. It is appropriate to call Monti, Jr., the manager. He "lived-in" at the restaurant and it seems to have been his duty to protect the place against burglars. (He had other duties.)

National Union had issued a policy of public liability insurance covering the company and its officers while acting as such officers. This was a large policy. Western had written a small

* The Honorable Warren J. Ferguson, United States District Judge for the Central District of California, sitting by designation.

homeowner's policy to Monti, Jr., but this excluded liability if he was engaged in a business pursuit at the time of the accident.

The victim wasted little time in suing Monti, Sr., the Casa Vieja Restaurant Company, and Monti, Jr., in an Arizona state court. The theory of the complaint was that Monti, Jr., when he shot, was acting in his executive capacity as an officer of the company.

If he was consciously but negligently protecting the restaurant's property, the company was liable and Western had no liability on its homeowner's policy. The exclusion excluded it out.

National Union commenced the defense of all defendants named in the state complaint. The theory of the complaint seemed to require it. (Monti, Jr.'s version to the police on the unfortunate night of the shooting was, "I must have been asleep." If this were a fact, National Union probably had no liability.)

The victim's lawyers took the discovery deposition of Monti, Jr. By this time his story had changed to point a finger in the direction of where the greatest insurance coverage was. He now pointed to the shooting as being a conscious tragic mistake while protecting the restaurant company's interest. If so, National Union was in trouble. The deposition was stopped. National Union recognized a conflict of interest.

Under court supervision, counsel for National Union withdrew from representing Monti, Jr., but remained to represent the restaurant company. At this point, Monti, Jr., went to see the broker who wrote his homeowner's policy for Western. Soon he was in the hands of Western's regular defense lawyers and they became Junior's attorneys of record.

Naturally, in this shift there was some paper work. Monti, Jr., was told by letter from National Union that he should go get lawyers to represent him, but that National Union would pay their fees.[1] Then with the appearance of Western's attorneys, previously unknown to Junior, he assigned in writing his

---

[1]
Law Offices
SHIMMEL, HILL, KLEINDIENST & BISHOP
10th Floor ·
111 West Monroe
Phoenix, Arizona 85003
Telephone 252–7431
Area Code 602
July 11, 1967
(CERTIFIED MAIL)

Mr. Leonard F. Monti, Jr.
Monti's La Casa Vieja
3 West First Street
Tempe, Arizona

> Re: [Plaintiff] v. Monti's La Casa Vieja Restaurant, Inc., an Arizona corporation; Leonard F. Monti and Leonard F. Monti, Jr., Maricopa County Superior Court Cause No. 200370.

Dear Mr. Monti:

Please be advised that this morning, July 11, 1967, the Court granted the motion of Shimmel, Hill, Kleindienst & Bishop to withdraw as your attorney in defense of the above suit. The court did not, however, grant our motion to stay the matters to be heard on July 13, 1967, at 8:45 A.M. in Division #2, as we have described in our letter of July 5, 1967.

You are at liberty to employ your own attorney to defend this action on your personal behalf and it is necessary that you do so in order to prevent the possibility of judgment being entered against you in this matter. The National Union Fire Insurance Company will and does by this letter agree to pay you the reasonable cost of defending this suit, including payment of your attorney's fees.

National Union Fire Insurance Company will further assist you in selecting an independent attorney, experienced in the defense of civil litigation if you desire them to do so.

It is to be understood by you, however, that National Union Fire Insurance Company continues to assert its position that it is not and will not be liable for any sum for which you may become obligated to pay under Paragraph One of the Insuring Agreements. It is the position of National Union Fire Insurance Company in this regard that you were not at the time and place [Plaintiff] alleges she was injured, and under the circumstances surrounding the accident, insured under Paragraph Three of the Insuring Agreements

letter agreement with National Union to Western, not to his new attorneys.

The case went to trial. The jury returned a verdict of $209,000 for the victim against the restaurant company, necessarily on the basis of a conscious act of a company officer protecting the company's property. This negated the theory that the act was that of a mere homeowner done in his sleep.

So National Union had to pay the sizeable judgment and its own attorney fees. Despite its written undertaking to pay the separate attorney for Junior, it was unhappy and reneged. We suspect it felt (and perhaps rightly so) that Western's attorneys had done as much to "stick" National as the victim's attorneys. So Western paid its attorneys who had represented Junior and brought this diversity suit in a United States district court to get from National Union that which National Union had agreed to pay. Upon the basis of affidavits, a motion for summary judgment was granted National Union, denying Western any relief. The district court forthrightly concluded that Western was just taking care of its own interest. But Western insists on its "contract rights": National Union agreed to pay and it ought to pay.

The position of each excites no sympathy, but we affirm.

It is possible that the district court pulled its trigger too quickly and there was a genuine issue of fact to be resolved, i. e., whose interests were Western's attorneys, while representing the captive client Monti, really protecting? But Western says it bases its right to recover solely on the assignment of Junior to it of his letter contract with National Union. But that states Western out of court, because if that is it, Western for the moment was indulging in being a broker for lawyers, an illegal thing.[2] Only by admitting that the lawyers of Junior were serving it can it escape the onus of a contract against public policy.

Counsel for both parties here are highly reputable lawyers. But there has been a bumbling that makes them all look worse than they deserve.

We cannot underwrite just how the same object might have been accomplished without a legal shadow coming across it. But one may suggest that Western could have pointed Junior in the direction of its own attorneys. Junior could have employed Western's attorneys and the attorneys could have relied on National Union's letter to Junior. Also, there might have been ways that National Union and Western could have contracted between themselves.

But on the basis of the assignment to Western, which hired the attorneys for Junior and paid them, we hold Western cannot recoup what it paid out.[3]

Summary judgment affirmed.

---

of National Union Fire Insurance Company Policy No. CPC 535711.

> May we impress upon you the urgency of obtaining your own counsel before Thursday, July 13, 1967, in order that your own attorney can appear at such scheduled hearings.
>
> > Very truly yours,
> > /s/ Richard A. Black
> > For Schimmel, Hill, Kleindienst & Bishop
>
> RAB/blj

2. We conclude that the assignment of Junior's claim to Western in order that Western could hire attorneys for Junior violated Arizona public policy and thus was void. See A.R.S. § 32–267, subsec. 8; Rules of the Arizona Supreme Court, Rule 29(a) 17 A.R.S. (1955); ABA Canons of Professional Ethics, Canon 35 (in effect at the time of this transaction); ABA formal Opinion No. 198; and the following Opinions of the Committee on Rules of Professional Conduct, State Bar of Arizona: Opinion No. 1 (1954), Opinion No. 17A (1956), Opinion No. 67 (1960), and Opinion No. 294 (1969).

3. The assignment here obviously does not come within the ambit of cases that permit a lawyer to pledge a prospective fee as security for a loan.

Further, we do not deal with such situations as legal aid or approved group legal services, which on one basis or another are ofttimes legally authorized.