# IN THE COURT OF APPEALS OF IOWA

No. 18-1997
Filed December 18, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ERIC CHANDLER PARMENTER,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dallas County, Gregory A. Hulse, Judge.

Defendant Eric Parmenter appeals from the judgment and sentence imposed following his conviction on two counts of sexual abuse in the third degree in violation of Iowa Code sections 709.1 and 709.4(1)(a) (2010). **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Matthew M. Boles and Adam C. Witosky of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

Heard by Vaitheswaran, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, Judge.**

Defendant Eric Parmenter appeals from the judgment and sentence imposed following his conviction on two counts of sexual abuse in the third degree in violation of Iowa Code sections 709.1 and 709.4(1)(a) (2010).[1]  On appeal, Parmenter argues (1) the State's abandonment of the charged timeframe for both counts deprived him of his due process rights; (2) the State committed prosecutorial misconduct by telling the jury to ignore the dates of the alleged incidents specified in the jury instructions; (3) Parmenter's right to a fair trial was violated when the district court admitted the testimony of a non-sequestered rebuttal witness; and (4) the verdict was contrary to the weight of the evidence.

## I.  Factual Background

In 2010, Parmenter lived with his parents and sibling in Perry.  He was twenty-one years old at the time.  The complaining witness, K.G., also lived in Perry with her family.  She was seventeen.  Parmenter's father and K.G.'s father had become friends working together at the local Hy-Vee, and the two families began spending time together in 2005.  These interactions included getting together to play board games, swimming in the Parmenters' pool, and having campfires.  Parmenter and K.G. began a dating relationship that lasted from September 2008 to August 2009.  The two kept the relationship a secret because K.G.'s parents had disapproved K.G. dating an older boy before and they believed K.G.'s parents would not approve her dating someone four years older

---

[1] Parmenter was also charged with two additional counts of sexual assault in the third degree in regard to two incidents alleged to have occurred in 2008.  The district court granted the State's motion to dismiss these two counts at the close of discovery.

than her.  The relationship "was mostly physical" and ended when Parmenter's parents found out about it.  The two remained on good terms.

The first alleged sexual assault happened sometime in the summer of 2010.  At trial, K.G. testified it happened "sometime in July" because she recalled her then-boyfriend was away on vacation at the time.  Parmenter had asked K.G. to come over to his parents' house to talk "in private."  When K.G. arrived at Parmenter's parents' house, he took her to his room in the basement.  There, he laid her on his bed and proceeded to sexually assault her.  K.G. testified Parmenter told her to "at least pretend like I was enjoying myself."

The second alleged assault occurred later that same summer.  K.G. was working at a Hy-Vee in Perry at the time.  Parmenter came into Hy-Vee to speak with K.G.  He handed her a letter and informed her that he was going to hang himself.  K.G. did not act on that information during her shift.  After returning home, K.G. received a text message from Parmenter in which Parmenter stated he was going to kill himself.  K.G. begged him not to, and ran to his house—which was only a few miles away—to stop him.  Parmenter had moved out of his parents' house in July 2010 and was in the process of renovating his new home. She arrived to find him standing on a stool with a noose around his neck.  When Parmenter saw K.G., he kicked the stool out from under his feet. K.G. supported his legs and talked him into getting back on the stool.  Exhausted, K.G. sat down in Parmenter's living room.  K.G. smelled alcohol on Parmenter's breath when he came and sat down next to her.  Parmenter proceeded to "d[o] the same thing that he in . . . the bedroom at his parents' house."  He again told her to "at least act like I liked it."

K.G. did not tell anyone about either incident until 2013, when she told a counselor about both incidents. K.G. told her brother D.G. about the incidents in late 2016 or early 2017. D.G. decided to confront Parmenter about the allegations in April 2017. D.G. invited Parmenter to a park in Perry and secretly recorded Parmenter on his cellphone. A redacted version of the recording was played for the jury. In the recording, Parmenter does not admit to any wrongdoing but states at various points "I'm not saying what I did was right" and when asked about what he believed K.G. told the police said "knowing your sister, she'd probably say the truth."

K.G. contacted the Perry Police Department in June 2017. Detectives interviewed K.G., D.G., their father, Eric. Parmenter and his family declined to give interviews. During D.G.'s interview with Perry police, he informed them that he had the recording of the conversation with Parmenter but he had lost it when he broke his phone. D.G. was able to recover the recording and turned it over to Perry police in November 2017. Parmenter was arrested in March 2018.

## II. Procedural Background

Leading up to the jury trial, Parmenter moved to exclude D.G.'s recording. He challenged the recording's foundation and argued it constituted hearsay and was unfairly prejudicial. The district court denied Parmenter's motion, instead redacting the forty-four minute recording to the ten-and-a-half minute clip that was ultimately played to the jury. Parmenter does not challenge that evidentiary ruling on appeal.

At trial, Parmenter challenged a number of the details in K.G.'s account of both sexual assaults including when they allegedly happened. The trial

information gave specific date ranges for both sexual assaults: it stated the sexual assault at Parmenter's parents' house happened "between July 15, 2010 and July 31, 2010"; the sexual assault at his house happened "between August 15, 2010 and August 31, 2010." Parmenter challenged these dates throughout trial. Parmenter testified that he had moved his bed from his parents' house to his house in Perry in early July, and no bed was moved in to replace it, contradicting K.G.'s allegation that he had laid her down on the bed before sexually assaulting her at his parents' house. His account was further corroborated by his mother, who testified there was no bed in the basement bedroom after Parmenter moved his bed out. In regard to the second alleged incident, Parmenter offered evidence about an incident occurring July 29; K.G. had informed law enforcement. Parmenter was hospitalized as a result. At the close of the State's case in chief, Parmenter moved for directed verdict on both counts, arguing the State had not shown the alleged sexual assaults occurred in the date ranges specified in the trial information. The district court denied the motion.

Parmenter further testified K.G. had never seen him with a noose around his neck and did not talk him into getting back on a stool. He maintained drywall had been hung in the house, making it impossible for a noose to be hung from the ceiling. To rebut Parmenter's testimony, the State called K.G.'s father to testify. He had not been sequestered and had observed K.G.'s testimony. He testified he was familiar with Parmenter's home, and had seen a noose hanging from the ceiling in a hallway sometime in "late summer of 2010." Parmenter preserved an objection to the testimony before K.G.'s father testified.

On the third day of trial, the court heard argument related to K.G.'s father's testimony and discussed the jury instructions with the parties before closing arguments. The court first addressed K.G.'s father's testimony and overruled Parmenter's objection:

> The rebuttal testimony did not contradict the majority of the testimony at all except to say that there was a part that he observed of the house that—where there was an open ceiling, and he saw a noose hanging there.
>
> I believe, number one, that the state is entitled to put on that rebuttal testimony; number two, that witness was listed. I believe that witness had a deposition taken earlier, and I don't—I believe that justice required that the state be allowed to present that evidence, especially given the fact that defendant raised that particular issue in its own presentation.

Parmenter also renewed his earlier motion for directed verdict arguing again that the inconsistencies between K.G.'s timeline of events and other testimony and evidence showed there was insufficient evidence to present either claim to the jury. The district court denied the motion.

The parties then reviewed the jury instructions, two of which are relevant on appeal. Jury instruction number sixteen related to the first sexual assault allegation and specified:

> "[T]he State must prove all of the following elements of Sexual Abuse in the Third Degree:
> 1. Between July 15 and July 31, 2010, the Defendant . . . performed a sex act with [K.G.].
> 2. The Defendant . . . performed the sex act by force or against the will of [K.G.]."

Jury instruction number seventeen stated the elements for the second alleged sexual assault at Parmenter's house later in the summer. The only difference between the two instructions is the date range in the first element: for the first element, jury instruction number seventeen states, "Between August 15 and

August 31, 2010, the Defendant . . . performed a sex act with [K.G.]." Neither party objected to either instruction. All of the instructions were read to the jury.

Finally, the parties gave their closing arguments. The following exchange happened during the State's rebuttal argument when the State discussed its burden to show whether the sexual assaults occurred during the time periods specified in the jury instructions:

> [The State:] The state doesn't have to prove the dates of these offenses to you. Those aren't the elements of the offense. The dates are there to provide reference, to separate the incidents, and [K.G.] admits it's possible she got the dates wrong, that she doesn't know for sure. She remembers it was the summer. She tries to tie them to the specific incidences.
> [Defense Counsel]: Your Honor, I'm going to object to these lines. There's nothing in the instructions that say that dates don't matter.
> THE COURT: Counsel, we won't be making any arguments outside of your closing summations. Counsel, approach the bench. You will disregard the statements that counsel for the defendant has just made at this point in time, unless I tell you different after this.

The court did not further instruct the jury after an unreported sidebar conversation with counsel. The State did not repeat its argument about the timeframes after this exchange.

The jury convicted Parmenter of both counts of sexual assault in the third degree. Parmenter moved for a new trial, arguing he did not receive a fair trial due to the State's abandonment of the timelines and its use of K.G.'s father's testimony to rebut his own, in violation of his due process rights under the United States Constitution and the Iowa Constitution. He argued the prosecutor's direction to the jury to ignore the charged timeframes constituted prosecutorial misconduct and that the jury verdict was against the weight of the evidence. The

district court denied the motion, analyzing the claimed misconduct under *State v. Graves*, 668 N.W.2d 860 (Iowa 2003). The court stated that the prosecutor's statements were "contrary to the court's instructions on the law" but that marshalling instructions numbers sixteen and seventeen, in conjunction with the court's instructions that arguments of counsel were not evidence, were sufficient to countermand any prejudice to Parmenter. The court stated it had considered the possible effect of a cautionary instruction following the prosecutor's statements and determined the court's instructions to the jury were sufficient.

The court sentenced Parmenter to two concurrent sentences of ten years in prison. Parmenter appeals.

## III. Standard of Review

"We review constitutional issues de novo." *State v. Lilly*, 930 N.W.2d 293, 298 (Iowa 2019). "We review a district court's ruling on claims of prosecutorial misconduct for abuse of discretion, which occurs when 'a court acts on grounds clearly untenable or to an extent clearly unreasonable.'" *State v. Coleman*, 907 N.W.2d 124, 134 (Iowa 2018) (quoting *State v. Krogmann*, 804 N.W.2d 518, 523 (Iowa 2011)). Decisions to sequester witnesses and decisions on rebuttal testimony are reviewed for abuse of discretion. *State v. Agent*, 443 N.W.2d 701, 704 (Iowa 1989); *see State v. Sharkey*, 311 N.W.2d 68, 70 (Iowa 1981) (reviewing the district court's denial of the defendant's motion to exclude the State's witnesses from the courtroom when not testifying under the abuse-of-discretion standard). "We review a district court's ruling as to whether a verdict was contrary to the weight of the evidence for abuse of discretion." *State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013). "We will find an abuse of

discretion when 'the district court exercises its discretion on grounds or for reasons that were clearly untenable or unreasonable.'" *State v. Headley*, 926 N.W.2d 545, 550 (Iowa 2019) (quoting *In re J.A.L.*, 694 N.W.2d 748, 751 (Iowa 2005)). "[A]ppellate review is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003).

## IV. Discussion

### a. Error Preservation

The State challenges error preservation for each of Parmenter's claims on appeal except his weight of the evidence claim. "[E]rror preservation is based on fairness." *DeVoss v. State*, 648 N.W.2d 56, 63 (Iowa 2002). "[O]ne party should not ambush another by raising issues on appeal, which that party did not raise in the district court." *Id.*

> It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal. When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal.

*Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). "If the court's ruling indicates that the court considered the issue and necessarily ruled on it, even if the court's reasoning is 'incomplete or sparse,' the issue has been preserved." *Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012) (quoting *Meier*, 641 N.W.2d at 540). Errors in closing arguments and constitutional errors must be preserved in the same manner as any other issue. *State v. Johnson*, 272 N.W.2d 480, 484 (Iowa 1978).

Parmenter argues he preserved error on all of his claims by raising each of them in his motion for new trial. However, a "[m]otion for new trial ordinarily is not sufficient to preserve error where proper objections were not made at trial." *State v. Seltzer*, 288 N.W.2d 557, 559 (Iowa 1980). The question is then whether objections alerting the court to the issues were made at trial. In regard to Parmenter's due process and prosecutorial misconduct claims, we conclude Parmenter did preserve error on prosecutorial misconduct but did not preserve his due process claim. Both claims stem from the State's assertion during its rebuttal argument that it did not need to prove the alleged sexual assaults happened in the timeframes specified in the trial information. The district court seemed to overrule defense counsel's objection to the prosecutor's statement when it was made during rebuttal argument telling the jury "to disregard the statements that counsel for the defendant has just made."[2] At this point, Parmenter did not need to move for a mistrial to preserve error. *Krogmann*, 804 N.W.2d at 526. *Cf. Neiderbach*, 837 N.W.2d at 209 (discussing *Krogmann* and noting its "rationale does not apply when the defendant's objection is overruled . . . . A motion for mistrial would be futile when the district court has overruled the objection to the statements giving rise to the grounds for a mistrial"). We address the merits of Parmenter's prosecutorial misconduct claim. There is no indication,

---

[2] The district court's statements during the sentencing hearing suggest the court misspoke in directing the jury to disregard defense counsel's objection, rather than the prosecutor's statements. At that hearing, the district court noted the court "instructed the prosecutor not to continue that argument" concerning the dates during the off-record sidebar, apparently agreeing with defense counsel. The record does not reflect whether the district court expressly sustained defense counsel's objection at the sidebar, but to the extent the jury was instructed to disregard defense counsel's statement, the objection preserved error.

however, that the district court considered whether the prosecutor's statement violated Parmenter's due process rights by creating a fatal variance between the trial information and the evidence offered at trial which deprived him of the ability to prepare his defense. That argument was first raised in Parmenter's motion for new trial. As such, we conclude Parmenter has not preserved that claim.

The State also disputes error preservation on Parmenter's fair trial claim relating to the admission of K.G.'s father's testimony. Primarily, the State argues error was not preserved because Parmenter did not expressly invoke Iowa Rule of Evidence 5.615. *See* Iowa R. Evid. 5.615 ("At a party's request the court may order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own."). We note, however, that a reference to a specific rule is not necessary; "[i]f the court's ruling indicates that the court *considered* the issue and necessarily ruled on it, even if the court's reasoning is 'incomplete or sparse,' the issue has been preserved." *Lamasters*, 821 N.W.2d at 864. Here, Parmenter objected to the admission of K.G.'s father's rebuttal testimony at trial, and the district court overruled his objection. We conclude Parmenter has preserved error on this issue as well and will address the merits of this claim.

### b. Merits

#### i. Dates of Alleged Sexual Assaults

On appeal, the State maintains that, because the date an assault occurred is not an element of a sexual abuse charge, *State v. Laffey*, 600 N.W.2d 57, 60 (Iowa 1999), it did not need to prove the alleged sexual assaults here occurred within the dates specified in the jury instructions. In support its argument, the

State cites the supreme court's opinion in *State v. Rankin*, 181 N.W.2d 169, 171 (Iowa 1970), where the court concluded the State was not required to prove the alleged sexual assault occurred on a certain date to find the defendant guilty. In *Rankin*, however, the jury instructions did not specify a date for the alleged sexual assault. 181 N.W.2d at 171. *Rankin* does not address a situation where, as here, the jury instructions require the State to prove the alleged offenses occurred between specific dates.

The State further cites several published and unpublished decisions of our court, all of which are similarly distinguishable from the procedural posture in this case. In *State v. Griffin*, 386 N.W.2d 529, 531–32 (Iowa Ct. App. 1986), and *State v. Brown*, 400 N.W.2d 74, 76–77 (Iowa Ct. App. 1986), panels of our court concluded the State did not have to prove the alleged crimes occurred on a specific date where the jury instructions and trial information specified the alleged crimes occurred "on or about" particular dates. The phrase "on or about" is a legal term of art that means "[a]pproximately" and is used "to prevent a variance between the pleading and the proof, usu[ally] when there is any uncertainty about the exact date of a pivotal event." *On or about*, Black's Law Dictionary (11th ed. 2019). That same phrase was used in the two other cases on which the State relies, *State v. Cain*, No. 14-1506, 2015 WL 5285763, at *2–3 (Iowa Ct. App. Sept. 10, 2015), and *State v. Potter*, No. 09-0579, 2010 WL 1875649, at *1–2 (Iowa Ct. App. May 12, 2010), two unreported decisions from our court. In *Cain* the defendant was charged with assaulting the complaining witness "on or about January 20, 2013." 2010 WL 5285763, at *2. During deliberations, the jury requested clarification on the timeframe of the alleged assault. *Id.* After

conferring with counsel for both parties, the district court provided a supplemental instruction that noted the date listed in the instructions was "simply a device by which it alerts an individual to a particular event" and "[i]t is the event and not the date that controls." *Id.* We affirmed, noting the district court's supplemental instruction correctly stated the law. *Id.* A similar fact pattern happened in *Potter*. In *Potter*, the defendant was charged with sexually assaulting three complaining witnesses in three incidents in 2002, 2004 and 2008. 2010 WL 1875649, at *3. The jury was instructed that "[t]he State does not have to prove the specific date on which the crime occurred." *Id.* (alteration in original). During closing arguments, the State told the jury the evidence used to prove the 2004 incident could be used to prove the 2002 incident, despite a jury instruction specifying the 2002 incident occurred "[o]n or about the 24th day of May 2002." *Id.* During deliberations, the jury asked for clarification about the date, and, after conferring with counsel, the district court advised them to look at its earlier instruction about the dates of the alleged offenses. *Id.* Neither party objected to this supplementary instruction. *Id.* Unlike Parmenter, each of these cases involved a jury instruction directing the jury the dates need not be proven by the State. *See also State v. Juste*, No. 18-2083, 2019 WL _____, at *___ (Iowa Ct. App. Dec. 18, 2019) (concluding the district court did not err by giving the jury an instruction stating the date of the alleged sexual assault "is not legally significant").

Unlike the cases the State cites, the trial information charged and the jury here was instructed the alleged sexual assaults occurring during two discrete ranges of days. "[T]he instruction, right or wrong, becomes the law of the case" if no objection is made to the instruction. *State v. Robinson*, 859 N.W.2d 464, 482

(Iowa 2015) (quoting *State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988)). Because the State failed to object to those instructions, they became the law of the case. Therefore, the State was required to prove the sexual assaults occurred between July 15 and July 31 and August 14 and August 31 respectively. We turn next to the question whether the prosecutor's rebuttal argument to the jury, while contrary to the law of the case, requires a reversal of Parmenter's convictions.

### ii. Prosecutorial Misconduct

Parmenter first argues the State's argument to the jury to disregard the charged time periods for the two sexual assaults constituted prosecutorial misconduct. Prosecutors "owe[] a duty to the defendant as well as to the public. The prosecutor's duty to the accused is to 'assure the defendant a fair trial' by complying with 'the requirements of due process throughout the trial.'" *Coleman*, 907 N.W.2d at 139 (quoting *Graves*, 668 N.W.2d at 870). Prosecutorial misconduct occurs where the prosecutor "acted with reckless disregard of this duty or intentionally made statements in violation of an obvious obligation, legal standard, or applicable rule that went beyond an exercise of poor judgment." *Id.* Once a defendant shows the prosecutor committed prosecutorial misconduct, they must still show prejudice to succeed on their claim. *Id.* at 138.

As discussed above, the State's failure to object to the inclusion of the specific dates in the two marshalling instructions or failure to request the jury be instructed the dates of the offenses need not be proven by the State results in a requirement the State prove the two sexual assaults occurred in the dates listed in the jury instructions. Even assuming the prosecutor's statement was

misconduct, however, this claim still fails because Parmenter has not shown prejudice. We use a five-factor test to assess whether a defendant was prejudiced by a prosecutor's misconduct: "(1) the severity and pervasiveness of the misconduct, (2) the significance of the misconduct to the central issues in the case, (3) the strength of the State's evidence, (4) the use of cautionary instructions or other curative measures, and (5) the extent to which the defense invited the misconduct." *Graves*, 668 N.W.2d at 869 (citations omitted). Applying these factors, we conclude no prejudice has resulted from the prosecutor's statement. At the outset, we note Parmenter's prosecutorial misconduct claim relates to one statement made by the prosecutor during the rebuttal argument. Isolated incidents such as this normally do not rise to the level of "severe and pervasive" misconduct required to show prejudice. *Coleman*, 907 N.W.2d at 140. The prosecutor's argument was otherwise professional and "sought to apply the law to the case." *Id.*

The factor given the most weight in the analysis is the third factor. *Id.* As the district court noted during sentencing "the weight of the evidence was totally dependent on who the jury believed." Apart from D.G.'s audiotape and the letter Parmenter gave to K.G. before the first incident the State relied primarily on testimony to make its case. Likewise, Parmenter relied primarily on testimony to defend himself. The jury found K.G.'s account and corroborating evidence more credible than Parmenter's account. Although defense counsel did not ask for a curative measure in regard to the prosecutor's statement, the district court admonished the jury immediately before the closing arguments not to construe counsel's arguments as either evidence or statements on the law:

> Counsel for each party will be summarizing the testimony that you heard and the evidence which was presented during the trial. They will be recalling the evidence, as you will later. They will not try to mislead you, and if their recollection of the testimony is not the same as yours, you must follow and rely on your own recollection. The summations are merely that, summations. They are not evidence, and they should not be construed by you as evidence; and they are not instructions on the law of the case. The summations are intended to help you understand the contentions of each party.

Because we cannot say Parmenter was prejudiced by the prosecutor's statement during rebuttal argument, his claim of prosecutorial misconduct must fail.

### iii.   Admission of Non-Sequestered Witness's Testimony

Next, Parmenter argues the district court erred by permitting the testimony of K.G.'s father, who had not been sequestered during trial, to rebut Parmenter's own testimony.  "In Iowa . . . a party is not entitled as a matter of right to exclusion of witnesses from the courtroom."  *State v. Pierce*, 287 N.W.2d 570, 574 (Iowa 1980).  Either party or the court on its own motion may move to sequester a witness.  *See* Iowa R. Evid. 5.615.  Parmenter never moved to sequester witnesses, instead relying on an "informal agreement" with the State not to call K.G.'s father to testify.

Even if K.G.'s father had violated a sequestration order by remaining in the courtroom, Parmenter cannot show the district court abused its discretion by allowing K.G.'s father to give rebuttal testimony.  "Rebuttal evidence is that which explains, repels, controverts, or disproves evidence produced by the opposing party."  *Carolan v. Hill*, 553 N.W.2d 882, 889 (Iowa 1996).  And we will only reverse the district court's decision to admit rebuttal testimony if Parmenter "was

substantially prejudiced by the evidence." *State v. Belken*, 633 N.W.2d 786, 796 (Iowa 2001).

The district court summarized the impact and extent of K.G.'s father's testimony, noting

> [K.G.'s father]'s testimony was substantially and limited to the fact that he observed a noose hanging in the subject house, or the house that was the subject of the testimony at some point in time during the summer of 2010.
> The only testimony—or the thing that that related to somewhat during the state's case was the fact that the complaining witness testified that she observed the defendant with a noose around his neck and threatening to kill himself and that following that then, the defendant put on more than one witness who testified that the house was finished to the extent that there was drywall on the ceilings, also to the fact that the ceilings were 7 foot high, also to the fact that the defendant is almost 6 feet tall, with all of the direct implications that there was no way, standing on a stool, that the events could have happened as explained by the complaining witness.
> The rebuttal testimony did not contradict the majority of the testimony at all except to say that there was a part that he observed of the house that—where there was an open ceiling, and he saw a noose hanging there.

While K.G.'s father's testimony may have prejudiced Parmenter on the one point, we cannot say the district court exercised its discretion in the context of a trial determined by the credibility of witnesses "on grounds or for reasons that were clearly untenable or unreasonable." *Headley*, 926 N.W.2d at 549. The district court did not abuse its discretion in overruling Parmenter's objection to the admission of K.G.'s father's rebuttal testimony.

### iv. Weight of the Evidence

Finally, Parmenter argues the district court erred by failing to exercise discretion in weighing the evidence. The weight-of-the-evidence standard "refers to a determination that more evidence supports one side than the other." *State v.*

*Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). The district court overruled Parmenter's motion for new trial stating:

> In this case, the weight of the evidence was totally dependent on who the jury believed. Thus the defendant is in essence asking the Court to substitute its judgment for that of the jury with regard to the credibility of witnesses.
>
> The Court understands, as [defense counsel] has correctly pointed out, that in its consideration of this motion that the Court can give further consideration to the credibility of the witnesses. However, even if the Court would not totally agree with the jury does not constitute an appropriate reason to question their findings with regard to credibility, and by making that statement I do not necessarily indicate that I have any specific problem with the findings of the jury.
>
> In any event, I am not going to substitute my judgment. Even if there was a difference, the jury was fully advised with regard to how to make its decision. The jury was advised with regard to how to approach determining the facts in light of conflicting stories and how to determine credibility. The jury obviously did that. There's no reason to believe that they did not.

While the district court must exercise its discretion "carefully and sparingly," *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998), it cannot refuse to exercise its discretion altogether. *See State v. Scalise*, 660 N.W.2d 58, 65–66 (Iowa 2003) ("[T]he district court must 'weigh the evidence and consider the credibility of the witnesses.' . . . [T]he court must independently consider whether the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted." (quoting *Ellis*, 578 N.W.2d at 658)). Because the district court did not exercise its discretion to weigh the credibility of the witnesses, we reverse the district court's ruling denying Parmenter's motion for new trial and remand the case to the district court to rule on his motion for new trial under the correct weight-of-the-evidence standard. *See Nitcher*, 720 N.W.2d at 560.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**